UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────

LEAH GARRETT

                            Plaintiff,

-against-

THE CITY UNIVERSITY OF NEW YORK,


                            Defendant.

───────────────────────────────

Case No. 24-CV-9710 (VSB)

**ORAL ARGUMENT
REQUESTED**


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT**


LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant CUNY*
28 Liberty Street
New York, New York 10005

Shaina L. Schwartz
Assistant Attorney General
*Of Counsel*

## <u>TABLE OF CONTENTS</u>

**Page (s)**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF ALLEGED FACTS ...................................................................................... 2

STANDARD OF REVIEW ......................................................................................................... 4

ARGUMENT ............................................................................................................................... 4

    I.     PLAINTIFF FAILS TO STATE A CLAIM UNDER TITLE VII ................................. 4

          A.  The Alleged Conduct Was Not Prompted By Plaintiff's Religion ......................... 6

          B.  Protected Speech Cannot Form The Basis Of A Hostile Work Environment ........ 8

          C.  Plaintiff's Remaining Claims Are Insufficient To State A Hostile Work
              Environment Claim ............................................................................................... 14

          D.  The Challenged Conduct Cannot Be Imputed to CUNY ...................................... 16

    II.    THE ELEVENTH AMENDMENT BARS PLAINTIFF'S STATE LAW
          CLAIMS ...................................................................................................................... 19

    III.   PLAINTIFF'S NELIGENCE CLAIMS ARE PRECLUDED BY NEW YORK
          STATE'S WORKERS' COMPENSATION LAW ..................................................... 20

CONCLUSION ........................................................................................................................... 21

Certification Pursuant to Local Civil Rule 7.1 (c) ...................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfano v. Costello,*
    294 F.3d 365, 379 (2d Cir. 2002)...........................................................................16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................................4

*Bel Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................................................4

*Bentley v. AutoZoners, LLC,*
    935 F.3d 76 (2d Cir. 2019)...................................................................................5

*Brown v. Coach Stores, Inc.,*
    163 F.3d 706 (2d Cir. 1998).................................................................................14

*Brown v. Henderson,*
    257 F.3d 246 (2d Cir. 2001).................................................................................6

*Canel v. Art Inst. of Chicago,*
    No. 23-cv-17064, 2025 WL 564504 (N.D. Ill. Feb. 20, 2025) ................................1

*Davis Next Friend LaShonda D. v. Monroe County Bd. Of Educ.,*
    526 U.S. 629 (1999)..............................................................................................19

*Davis v. N.Y. Dep't of Corr.,*
    256 F. Supp. 3d 343 (S.D.N.Y. 2017)...................................................................15

*Dube v. State Univ. of N.Y.,*
    900 F.2d 587 (2d Cir. 1990).................................................................................10

*Duff v. Pristine Services, Inc.,*
    19-cv-10423, 2021 WL 663981 (S.D.N.Y. Feb. 19, 2021) ....................................15

*Edwards v. N.Y. State Off. of Mental Health,*
    16-cv-1397, 2017 WL 666227 (E.D.N.Y. Feb. 20, 2017) ......................................20

*Ferris v. Delta Air Lines, Inc.,*
    277 F.3d 128 (2d Cir. 2001).................................................................................21

*Gartenberg v. Cooper Union for the Advancement of Science and Art,*
    24-cv-2669, 2025 WL 401109 (S.D.N.Y. Feb. 5, 2025) ................................ passim

*Gartenberg v. Cooper Union for Advancement of Science and Art*,
   24-cv-2669, 2025 WL 602945 (S.D.N.Y. Feb. 25, 2025) ................................................ 12-13

*Gerzhgorin v. Selfhelp Comm. Servs., Inc.*,
   18-cv-4344, 2022 WL 912523 (E.D.N.Y. Mar. 29, 2022) ......................................................8

*Harris v. Forklift Sys.*,
   510 U.S. 17 (1993)..................................................................................................................5

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009)......................................................................................................4

*Healy v. James*,
   408 U.S. 169 (1972)................................................................................................................9

*Heim v. Daniel*,
   81 F.4th 212 (2d Cir. 2023) ..................................................................................................11

*Karunakaran v. Borough of Manhattan Community College*,
   18-cv-1-723, 2021 WL 535490 (S.D.N.Y. Feb. 12, 2021) ....................................................17

*Kelly v. N. Shore-Long Island Health Sys.*,
   13-cv-1284, 2014 WL 2863020 (E.D.N.Y. June 22, 2014)....................................................20

*Keyishian v. Bd. Of Regents of the Univ. of the State of N.Y.*,
   385 U.S. 589 ..........................................................................................................................13

*Krasner v. HSH Nordbank AG*,
   680 F. Supp. 2d 502 (S.D.N.Y. 2010)................................................................................. 6-8

*Landau v. Corp. of Haverford College*,
   No. 24-2044, 2025 WL 35469 (E.D. Pa. Jan. 6, 2025)............................................................9

*Leibovitz v. N.Y.C. Trans. Auth.*,
   252 F.3d 179 (2d Cir. 2001)....................................................................................................8

*Leizerovici v. HASC Center, Inc.*,
   17-cv-5774, 2018 WL 1115348 (E.D.N.Y. Feb. 27, 2018) ....................................................7

*Leroy v. Delta Air Lines*,
   21-267-cv, 2022 WL 12144507 (2d Cir. Oct. 27, 2022) .......................................................17

*Littlejohn v. City of N.Y.*,
   795 F.3d 297 (2d Cir. 2015)....................................................................................................5

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)....................................................................................................4

*Maron v. Legal Aid Soc.*,
    605 F. Supp. 3d 547 (S.D.N.Y. 2022) ..................................................................................5

*McGrath v. Thompson Reuters*,
    10-cv-4944, 2012 WL 2119112 (S.D.N.Y. Apr. 30, 2012) .................................................15

*Naprstek v. Mariott Int'l, Inc.*,
    21-cv-8560, 2024 WL 4449700 (S.D.N.Y. Oct. 9, 2024) ...................................................21

*Nungesser v. Columbia University*,
    244 F. Supp. 3d 345 (S.D.N.Y. 2017) ................................................................................19

*Ohok v. Sullivan*,
    10-cv-2547, 2011 WL 672420 (S.D.N.Y. Feb. 24, 2011) ..................................................20

*Prince v. Cablevision Sys. Corp.*,
    04-cv-8151, 2005 WL 1060373 (S.D.N.Y. May 6, 2005) ..................................................18

*Roches-Bowman v. City of Mount Vernon*,
    21-cv-5572, 2022 WL 3648394 (S.D.N.Y. Aug. 24, 2022) ...............................................18

*Rogers v. Fashion Inst. Of Technology*,
    14-cv-6420, 2016 WL 889590 (S.D.N.Y. Feb. 26, 2016) ....................................................5

*Rosenberger v. Rector and Visitors of Univ. of Virginia*,
    515 U.S. 819 (1995) .............................................................................................................9

*Sank v. City Univ. of N.Y.*,
    112 F. App'x 761 (2d Cir. 2004) .......................................................................................20

*Shao v. City Univ. of N.Y.*,
    12-cv-1566, 2014 WL 5038389 (S.D.N.Y. Sept. 30, 2014) ..............................................20

*Shibeshi v. City Univ. of New York*,
    12-cv-1147, 2012 WL 12884419 (S.D.N.Y. 2012) ...........................................................20

*Sletten v. LiquidHub, Inc.*,
    13-cv-1146, 2014 WL 3388866 (S.D.N.Y. July 11, 2014) ................................................14

*Soloviev v. Goldstein*,
    104 F. Supp. 3d 232 (E.D.N.Y. 2015) ...............................................................................20

*Spohn v. West*,
    00-cv-0735, 2000 WL 1459981 (S.D.N.Y. Oct. 2, 2000) .................................................16

*Summa v. Hofstra Univ.*,
    708 F.3d 115 (2d Cir. 2013) ..............................................................................................18

*Thior v. JetBlue Airways*,
    13-cv-6211, 2016 WL 5092567 (E.D.N.Y. Sept. 19, 2016) ...................................................15

*Torres v. Pisano*,
    116 F.3d 625 ......................................................................................................................21

*Troeger v. JetBlue Airways*,
    23-cv-10859, 2024 WL 5146185 (S.D.N.Y. Dec. 17, 2024) .................................................17

*Vance v. Ball State Univ.*,
    570 U.S. 421 (2013).............................................................................................................16

*Vega v. Miller*,
    273 F.3d 460 (2d Cir. 2001)...............................................................................................10

*Wallace v. Crab House, Inc.*,
    No. 21-cv-5757, 2022 WL 1501089 (S.D.N.Y. May 12, 2022) ............................................15

*Williams v. County of Nassau*,
    15-cv-7098, 2019 WL 2270518 (E.D.N.Y. May 28, 2019)..............................................15, 17

*Williams v. N.Y.S. Unified Court Sys. Off. Of Court Admin.*,
    16-cv-2061, 2017 WL 4402562 (S.D.N.Y. Sept. 30, 2017) ..............................................5, 16

*Woodard v. TWC Media Solutions, Inc.*,
    09-cv-3000, 2011 WL 70386 (S.D.N.Y. Jan. 4, 2011)..........................................................8

## Constitutions

U.S. Const. amend.
    I ................................................................................................................................ passim
    XI ....................................................................................................................................19-20

## Federal Statutes

42 U.S.C.§ 2000e-2(a)(1)..........................................................................................................6

## Rules

Rule 7.1(c) of Local Rules of the USDC for Southern and Eastern Disctrits of New York..........22

Fed R. of Civ. P.
    R. 12(b)(1).....................................................................................................................4, 20
    R. 12(b)(6)..........................................................................................................................4

**Miscellaneous Authorities**

https://www.cuny.edu/about/administration/offices/hr/recruitment-diversity/diversity-
        inclusion/.................................................................................................................................1

Defendant City University of New York ("CUNY") respectfully submits this memorandum of law in support of its motion, brought pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint, filed December 17, 2024, in its entirety and with prejudice.

## PRELIMINARY STATEMENT

CUNY is a university system comprised of more than 25 institutions serving more than 240,000 students each year. CUNY has long been recognized as one of the most diverse university systems in the nation.[1] CUNY works to continue building and supporting its diverse community, which is fundamental to the exchange of ideas and scholarly discourse. CUNY does so while maintaining its commitment to free speech as well as its mission to combat all forms of hate, including antisemitism.

Exploring new ideas and debating the virtues of varying viewpoints are the bedrock of college education, and nowhere is the exchange of ideas more fundamental than on a public university campus. The exchange of ideas and scholarly discourse can take many forms, from vigorous classroom debates to student advocacy outside the classroom. As such, university campuses such as CUNY are no strangers to geopolitical advocacy protected by the First Amendment. Recently, college campuses have been a focal point for advocacy regarding the war between Israel and Hamas in the wake of the attack by Hamas in Israel on October 7, 2023. Protests sprang up on college campuses across the country as advocates on both sides of the conflict made their voices heard.[2]

---

[1] *See* https://www.cuny.edu/about/administration/offices/hr/recruitment-diversity/diversity-inclusion/.
[2] *See Canel v. Art Inst. of Chicago,* No. 23-cv-17064, 2025 WL 564504, at *9 (N.D. Ill. Feb. 20, 2025) (noting the "protests that erupted on campuses nationwide" after Hamas's October 7 attack).

It is this exchange of ideas and geopolitical advocacy that forms the basis of the instant employment action. Plaintiff, the Larry A. and Klara Silverstein Chair in Jewish Studies and Director of Hebrew and Jewish Studies at Hunter College, alleges that pro-Palestinian advocacy created a hostile work environment at Hunter College. For the reasons set forth in more detail herein, Plaintiff's claims should be dismissed in their entirety.

As an initial matter, almost all the conduct alleged in the Complaint is not discriminatory harassment directed at Plaintiff or prompted by her membership in a protected class. Indeed, the vast majority consists of advocacy or First Amendment protected political speech directed at the community at large and not targeted at Plaintiff, and thus cannot support a hostile work environment claim. The few allegations arguably directed at Plaintiff specifically, such as two hearsay comments by a professor, are stray acts and not severe or pervasive. Finally, the challenged conduct does not support a claim under Title VII because Plaintiff has failed to allege how the conduct on campus can be imputed to CUNY.

Moreover, the Eleventh Amendment precludes Plaintiff's state law claims for negligence and breach of contract. Plaintiff's negligence claims are also precluded by New York Workers' Compensation Law, which provides the exclusive remedy for negligence claims against an employer. Accordingly, for the reasons set forth below, Plaintiff's claims should be dismissed pursuant to Rules 12(b)(1) and (b)(6).

### STATEMENT OF ALLEGED FACTS[3]

Plaintiff is the Larry A. and Klara Silverstein Chair in Jewish Studies and Director of Hebrew and Jewish Studies at Hunter College. Compl., ¶¶ 2, 21. Plaintiff alleges that she was subjected to a hostile work environment when administrators at Hunter College failed to respond

---

[3] The truth of Plaintiff's non-conclusory factual allegations is assumed only for purposes of this motion to dismiss.

to acts of antisemitism on campus arising in the aftermath of the October 7th attack on Israel by Hamas. Specifically, Plaintiff alleges that Hunter College failed to respond to (i) antisemitic graffiti, flyers, posters, stickers, emails and social media posts (*id.*, ¶¶ 52-54, 56-57, 59-60, 62); (ii) student protests espousing antisemitic and anti-Israel rhetoric (*id.*, ¶¶ 55, 63); and (iii) antisemitic comments made by faculty and student groups (*id.*, ¶¶ 67-70). Plaintiff does not allege that any of this conduct was specifically directed at her. Plaintiff also alleges that Hunter College rejected a request to light a menorah on Hanukkah while permitting a screening of an anti-Israel film (*id.*, ¶¶ 73-78), that the Hunter College Senate administrative Committee meetings were "overtaken" by anti-Israel protesters (*id.*, ¶¶ 64-65), and that Hunter College failed to provide security for the student programming Plaintiff planned on topics relevant to the Jewish community and Israel (*id.*, ¶¶ 79-81).

Plaintiff further alleges that (i) CUNY breached Plaintiff's employment agreement by refusing to collaborate with Plaintiff on the incidents of antisemitism and failing to provide necessary support for Plaintiff to address these incidents; (ii) CUNY was negligent in its retention and supervision of John Rose, Dean of the Office of Diversity and Compliance ("ODC") at Hunter College, who failed to remedy antisemitism on campus; and (iii) CUNY negligently inflicted emotional distress on Plaintiff by failing to provide additional security measures which she requested for in-person events and classes. *Id.*, ¶¶ 79-81, 132, 136, 145.

Based on these allegations, Plaintiff asserts causes of action for hostile work environment pursuant to Title VII and common law causes of action for breach of contract, negligence, negligent supervision, negligent retention, and negligent infliction of emotional distress. Plaintiff seeks declaratory relief, injunctive relief, money damages, punitive damages, and attorney's fees and costs.

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S at 556). The "plausibility standard" is guided by "two working principles." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft*, 556 U.S. 662). "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (internal quotation marks omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## ARGUMENT

### I.    PLAINTIFF FAILS TO STATE A CLAIM UNDER TITLE VII

"To state a claim for hostile work environment under Title VII, 'a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently

4

severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Williams v. N.Y.S. Unified Court Sys. Off. Of Court Admin.*, 16-cv-2061, 2017 WL 4402562, at *6 (S.D.N.Y. Sept. 30, 2017) (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 320-21 (2d Cir. 2015)).   In assessing a hostile work environment claim, courts review the "totality of the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).   "Plaintiff must allege that the incidents were more than episodic; they must be sufficiently continuous and concentrated in order to be deemed pervasive." *Id.* (quoting *Littlejohn*, 795 F.3d at 321).

"A plaintiff must also plausibly allege that the hostile work environment was caused by animus towards him as a result of his membership in a protected class." *Id.* at *6 (cleaned up); *Rogers v. Fashion Inst. Of Technology*, 14-cv-6420, 2016 WL 889590, at *8 (S.D.N.Y. Feb. 26, 2016) ("Plaintiff must plausibly allege a basis to infer that Defendants took these unfavorable actions because of [Plaintiff's protected class].").   Finally, "to hold an employer liable for such a hostile work environment, federal law requires the plaintiff to show 'a specific basis for imputing the conduct creating the hostile work environment to the employer.'" *Maron v. Legal Aid Soc.*, 605 F. Supp. 3d 547, 561 (S.D.N.Y. 2022) (quoting *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 90 (2d Cir. 2019)).

Plaintiff has not met this burden.   Almost all of the conduct alleged in the Complaint is activism relating to the conflict between Israel and Hamas, which was not prompted by Plaintiff's membership in a protected class and is not directed at her.   This lack of causation between Plaintiff's protected characteristic (here, her religion) and the alleged harassing conduct is fatal to

her claim.  Moreover, while Plaintiff was understandably offended by some of the conduct, such conduct is not the type of direct harassment that can form the basis of a hostile work environment claim; much of the alleged conduct is also protected by the First Amendment and cannot form the basis of a hostile work environment claim.  The remaining alleged conduct is not sufficiently severe or pervasive to sustain a hostile work environment.  Plaintiff also fails to demonstrate a basis to impute allegedly harassing conduct to CUNY.  At bottom, Plaintiff cannot state an actionable claim merely by alleging that CUNY failed to quash unwelcome speech on campus. For these reasons, Plaintiff fails to state a claim for hostile work environment, and her Title VII claim must be dismissed.

## A.  The Alleged Conduct Was Not Prompted By Plaintiff's Religion

Much of the alleged conduct which forms the basis of Plaintiff's hostile work environment claim is conduct which Plaintiff does not, and cannot, allege was prompted by her membership in a protected class.  As the Second Circuit has explained, "[i]t is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through [other employment actions], is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."  *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).  "In determining whether an employee has been discriminated against 'because of *such individual's* [protected characteristic],' the courts have consistently emphasized that the ultimate issue is the reason for the *individual plaintiff's* treatment . . ." *Id*. (quoting 42 U.S.C. § 2000e-2(a)(1)) (emphasis in original).  "The prohibited causal factor requirement thus flows directly from the text of Title VII, and from the very essence of its nature as an *anti-discrimination* law." *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 514 (S.D.N.Y. 2010).  "The prohibited causal factor requirement makes clear that a [] hostile work environment in the Title VII context is not one that is bad for all living

6

things in a manner that happens to involve [the protected characteristic]; rather it is one that is *discriminatorily* hostile to an employee based on *his or her* [protected characteristic]." *Id.*

Plaintiff's failure to allege that the conduct described in the Complaint, including *inter alia* the student protests, flyers, social media posts, and open letters, were prompted by her membership in a protected class is fatal to her claim. *See Krasner*, 680 F. Supp. 2d at 513 ("[T]he prohibited causal factor requirement [] is critical to liability."); *see also Leizerovici v. HASC Center, Inc.*, 17-cv-5774, 2018 WL 1115348, at *5 (E.D.N.Y. Feb. 27, 2018) ("Critically, the complained of conduct must have been *prompted by the plaintiff's status*.") (emphasis added). The challenged conduct is rooted in the conflict between Israel and Hamas following the attack in Israel on October 7, 2023, and Plaintiff cannot allege that it was prompted by her membership in a protected class. For example, Plaintiff does not allege that the messages espoused in the fliers, social media posts, open letters, during on-campus events, or at protests were prompted by her religion. *See, e.g., id.*, ¶55 (describing student-organized "Rally for Palestine"); ¶ 59 (describing fliers supporting the Boycott, Divestment and Sanctions movement); ¶¶ 54-55 (describing social media posts), ¶ 62 (describing open letter signed by student clubs); ¶ 72 (challenging the screening of a film); ¶ 86 (describing "anti-Israel" protests). The same is true for the allegations regarding purported statements made by faculty members to students and in Faculty Senate meetings, *see id.*, ¶ 64 (alleging Faculty Senate meeting was "overtaken by anti-Israel protesters" after the attack on Israel on October 7, 2023); ¶ 69 (alleging that an adjunct professor asked a Jewish student if she "had anything to say about the 'genocide in Gaza.'"), and the conduct of the History Club, *see id.*, ¶ 70 (alleging that History Club had been "taken over by anti-Israel students" and was "promoting the works of known antisemitic writers."). While the alleged conduct may have offended Plaintiff (and others at CUNY), Plaintiff does not allege that the conduct was prompted by *her* membership

in a protected class, and as such they cannot sustain her hostile work environment claim. *See Krasner*, 680 F. Supp. 2d, at 516 ("[Plaintiff's] claim fails because none of the alleged acts of harassment . . . support a claim that he is being harassed because he is a *male* employee") (cleaned up).

Moreover, this alleged conduct was not directed at Plaintiff, and thus it is "far less persuasive in establishing a claim for hostile work environment." *See Woodard v. TWC Media Solutions, Inc.*, 09-cv-3000, 2011 WL 70386, at *12 (S.D.N.Y. Jan. 4, 2011) ("[W]here Plaintiff was not the direct recipient of harassing or threatening comments, they are far less persuasive in establishing a claim of hostile work environment"). Finally, any conduct that Plaintiff fails to allege that she experienced firsthand cannot form the basis of her hostile work environment claim. *See, e.g.*, Compl., ¶¶ 69-70; *see also Gerzhgorin v. Selfhelp Comm. Servs., Inc.*, 18-cv-4344, 2022 WL 912523, at *5 (E.D.N.Y. Mar. 29, 2022), *aff'd*, 22-cv-808, 2023 WL 2469824 (2d Cir. Mar. 13, 2023) (where an offensive comment is not made "to, about, or in the presence of Plaintiff . . . [it] is fatal to Plaintiff's claim."). As the Second Circuit has held, "Title VII's prohibition against hostile work discrimination affords no claim to a person who experiences it by hearsay." *Leibovitz v. N.Y.C. Trans. Auth.*, 252 F.3d 179, 189 (2d Cir. 2001). Thus, Plaintiff's allegations concerning activism and other conduct that she did not herself observe cannot form the basis of a viable Title VII claim.

**B. Protected Speech Cannot Form The Basis Of A Hostile Work Environment**

Most of the conduct alleged in the Complaint involves activism that does not constitute actionable harassment under Title VII, despite the fact that it may have been deemed offensive by Plaintiff and others at CUNY. Plaintiff is essentially asking the Court to hold CUNY liable for failing to quash speech which Plaintiff finds offensive. However, a "college classroom with its

8

surrounding environs is peculiarly the marketplace of ideas," and federal law does not (and in many cases cannot) require CUNY to punish certain speech, even if that speech is unwelcome. *See Healy v. James*, 408 U.S. 169, 181, 187-88 (1972) ("the College, acting here as an instrumentality of the State, may not restrict speech or associations simply because it finds the views expressed by any group to be abhorrent.").

As the court in *Newman v. Point Park University* recognized, accepting pro-Palestinian advocacy as the basis for a hostile work environment claim would "invalidate . . . an entire academic and public debate" and "would effectively compel, under the pain of Title VII liability, that any speech and viewpoints held and espoused by others as part of that debate . . . be reformulated." 20-cv-00204, 2022 WL 969601, at *25 (W.D. Pa. Mar. 31, 2022); *see also Landau v. Corp. of Haverford College*, No. 24-2044, 2025 WL 35469, at *2 (E.D. Pa. Jan. 6, 2025) ("reasonable people acting in good faith can challenge decisions of the Israeli government without harboring antisemitic views."). The Supreme Court has stated that restrictions which target "particular views taken by speakers on a subject" are a "blatant" violation of the First Amendment. *See Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 828 (1995). This type of viewpoint restriction would be especially problematic at a public university such as CUNY, where speech is ardently protected by the First Amendment. *See Healy*, 408 U.S. at 180 ("[S]tate colleges and universities are not enclaves immune from the sweep of the First Amendment."); *see also Rosenberger*, 515 U.S. at 835 ("For [a university] . . . to cast disapproval on particular viewpoints of its students risks the suppression of free speech and creative inquiry in one of the vital centers for the Nation's intellectual life, its college and university campuses."). Indeed, the Supreme Court has recognized that neither "students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate" (*see Healy*, 408 U.S. at 180), and the

Second Circuit has explicitly recognized that teachers are permitted to criticize Zionism in classrooms, "despite the offensiveness of the teacher's viewpoint to some students and some members of the community." *See Vega v. Miller*, 273 F.3d 460, 467 (2d Cir. 2001) (discussing *Dube v. State Univ. of N.Y.*, 900 F.2d 587 (2d Cir. 1990)). While these principles were not espoused in the context of employment discrimination, they apply equally here as well.

The court's recent decision in *Gartenberg v. Cooper Union for the Advancement of Science and Art*, 24-cv-2669, 2025 WL 401109 (S.D.N.Y. Feb. 5, 2025), is instructive. There, as here, the plaintiffs alleged a hostile environment based on conduct which included *inter alia* advocacy on campus which they considered antisemitic harassment. *Id*., at *7. While the court ultimately concluded that the plaintiffs sufficiently alleged a hostile educational environment, the court expressed grave concern about universities censoring political speech to avoid liability for a hostile educational environment. *Id*., at *18 ("It would be difficult to imagine an outcome more antithetical to the First Amendment than imposing liability for a hostile environment on a [] college for its judgment about what its students should be taught or allowed to say on matters of political significance."). As the court explained, "requiring schools to censor or punish political speech to avoid liability for a hostile environment would burden not only their students' freedom of expression, but the academic freedom of the institution itself to create an educational environment centered around the free exchange of ideas." *Id*., at *7.

The court provided a taxonomy of what constitutes appropriate speech and determined that much of the conduct alleged was "pure speech on matters of obvious public concern directed at the campus community as a whole." *Id*., at *14. For example, the *Gartenberg* complaint alleged that fliers were distributed around campus inviting students to "celebrate the 36th anniversary of the First Intifada" and to a vigil hosted by student advocates to "grieve and honor all those killed

by decades of Israeli occupation and imperial violence." *Id*.  The complaint also alleged that Cooper Union's student-run newspaper included articles "criticizing the conflation of Zionism and Judaism as manipulative, exploitative, and racist," that alumni published a letter that "attempted to justify the sickening Hamas attack of October 7," that activists created an "art display" that included the words "RESIST COLONIALISM FROM THE BRONX TO PALESTINE BY ANY MEANS NECESSARY," and that Cooper Union required students, including Jewish students, to attend a speech titled "the Never Again Syndrome: Uses and Misuses of Holocaust Memory and the Weaponizing of Language by anti-Israel activist Omer Bartov." *Id*.

Much of the alleged conduct that the court concluded was "pure speech" parallels the conduct Plaintiff alleges here, such as Plaintiff's allegations that "antisemitic fliers were [] distributed in support of the antisemitic Boycott, Divestment and Sanctions [] movement," (Compl., ¶59); that "several student clubs signed and publicized an open letter praising the October 7th Hamas terror attack as an 'act of resistance,'" that student advocacy groups published social media posts discussing "Palestinian resistance" (*id*., ¶¶ 55-56), and that CUNY sponsored a screening of the film *Israelism*, which Plaintiff alleges "falsely claims that Jews use antisemitism as a tool to silence pro-Palestinian voices." (*id*., ¶ 72).  As the court in *Gartenberg* explained, this conduct is "pure speech," and "[n]o matter how offensive these incidents may have been, holding [the university] liable for failing to censor or punish such expression 'cannot be squared with the Supreme Court's long-professed, deep commitment to safeguarding academic freedom as a special concern of the First Amendment." *Id*., at *17 (quoting *Heim v. Daniel*, 81 F.4th 212, 227 (2d Cir. 2023)).  Indeed, if the court "were to rule otherwise . . . nothing would prevent Palestinian or Arab students from filing mirror-image claims based on their school's failure to censor pro-Israel

speakers on campus who express controversial views or to punish students who speak loudly in support of the Israeli government's policies." *Id.*, at *18.

While the court ultimately allowed some of the *Gartenberg* plaintiffs' claims to proceed, those claims were based on allegations far more egregious than those pled here. Specifically, the court found that the plaintiffs alleged "numerous examples of deliberate indifference that did not involve Cooper Union's refusal to suppress political speech," such as allegations surrounding an incident where Cooper Union allegedly "did nothing to prevent a group of [] protesters from [] occupying the Foundation Building." *Id.* During that incident, the complaint alleges that a group of Jewish students (who were plainly visible to the protesters and dressed in traditionally Jewish attire) hid in the library while protesters were "banging" on the library doors and floor-to-ceiling windows while "yelling slogans" and "demanding to be let in." *Id.* The complaint alleged that the incident was so severe that the Jewish students called the NYPD for help, and the President of Cooper Union locked her own office door. *Id.* The Court found Cooper Union's response to this incident constituted "deliberate indifference" because, *inter alia*, despite locking the door to her office and leaving the building through a back entrance, the President told police officers on the scene to stand down. *Id.* Plaintiff here does not allege that she was subjected to a comparable incident or that CUNY acted with similar indifference to the conduct alleged in the Complaint.[4]

---

[4] The plaintiffs in *Gartenberg* moved for reconsideration of the court's ruling that certain incidents were protected speech and therefore not actionable as harassment. *See Gartenberg v. Cooper Union for Advancement of Science and Art*, 24-cv-2669, 2025 WL 602945, at *1 (S.D.N.Y. Feb. 25, 2025). The court denied the motion, and "declined to amend its First Amendment analysis to expose Cooper Union to potential liability" based on conduct the court concluded was "pure speech." *See id.*, at *1-2. In its analysis, the court emphasized the need to balance the interests of protecting speech, particularly in the college setting, and preventing discriminatory harassment. *Id.* In reiterating the "vital" need for "vigilant protections of constitutional freedoms," the court noted that it was the allegations of "physically threatening or humiliating conduct and repeated acts of antisemitic vandalism" which "formed the very basis for the Court's refusal to dismiss her civil rights claims . . ." *Id.* The court also acknowledged the "genuine pain that much of the discourse surrounding the Israeli-Palestinian conflict has inflicted, and continues to inflict, on Jewish college students around the country." *Id.*, at *4. Ultimately, however, the court concluded that "constru[ing] Title VI's prohibition on discriminatory harassment as sweeping in instances of pure speech that are reasonably designed or intended to contribute to the ongoing public debate concerning the Israeli-Palestinian conflict would risk the

The Ninth Circuit's decision in *Rodriguez v. Maricopa County Community College District*, also supports dismissal here.    In *Rodriguez*, the plaintiffs alleged a hostile work environment after a professor sent several "racially-charged emails" over a distribution list maintained by the college.  605 F.3d 705, 705 (9th Cir. 2010).  The court acknowledged that the plaintiffs "no doubt [felt] demeaned by [the emails]," but held that "it is axiomatic that the government may not silence speech because the ideas it promotes are thought to be offensive." *Id.*, at 708.  The court celebrated the "intense debate" sparked by the emails, including that "in the best tradition of higher learning, students protested."  *Id*.  The court was emphatic in its defense of provocation and discord on college campuses.  *Id*. ("Teachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise our civilization will stagnate and die.") (quoting *Keyishian v. Bd. Of Regents of the Univ. of the State of N.Y.*, 385 U.S. 589, 603) (1967)).  As the court explained, "[t]he Constitution embraces [] a heated exchange of views, even when they concern sensitive topics . . . where the risk of conflict and insult is high," and that this "is particularly so on college campuses."  *Id*.  The court warned that the traditional role of colleges and universities to foster the exchange of views "will not survive if certain points of view may be declared beyond the pale."  *Id*., at 709.  Ultimately, the court concluded that the professor's emails and website were not conduct which is generally targeted by harassment laws.  *Id*., at 710.  Instead, it was "pure speech; they were the effective equivalent of standing on a soap box in a campus quadrangle and speaking to all within earshot."

The same principles apply here.  As the courts in *Rodriguez* and *Gartenberg* noted, speech "on a matter of public concern, directed to the college community, will generally fail to constitute

---

suppression of free speech and creative inquiry in one of the vital centers of the Nation's intellectual life, its college and university campuses.  This is a result the Court must avoid."  *Id*., at *5. (internal quotation marks and citations omitted).

unlawful harassment." *Gartenberg*, 2025 WL 401109, at \*11; *Rodriguez*, 605 F.3d at 703 ("We therefore doubt that a college professor's expression on a matter of public concern, directed to the college community, could ever constitute unlawful harassment. . .").  Put simply, the conduct alleged here did not create a hostile work environment for Plaintiff.  While Plaintiff, and others at CUNY, may have been offended by the point of view espoused by the speech alleged in the complaint, it was not conduct directed at Plaintiff that could form the basis of a hostile work environment claim.

### C. Plaintiff's Remaining Claims Are Insufficient To State A Hostile Work Environment Claim

The remaining alleged conduct fails to rise to the level of severe and pervasive conduct required to state a hostile work environment claim.  Specifically, the remaining allegations include allegations that (i) another professor at Hunter College said Plaintiff "is pretending to be a Jew so she can sell her books," and that Plaintiff "sells her books at synagogues with rich Jews;" Compl., ¶ 67; (ii) CUNY rejected a request to display a menorah on Hanukkah one year (*id*., ¶¶ 12, 76-78); (iii) CUNY refused to provide security for the events Plaintiff planned on campus regarding topics of interest to Jewish students (*id*., ¶¶ 79-82); and (iv) CUNY took five hours to remove defaced posters of Israeli hostages (*id*., ¶ 60).  This is insufficient to state a claim.

The comments allegedly made by the professor, to the extent they are considered antisemitic, are "stray remarks at best," which Plaintiff learned of second hand (*see id*., ¶ 67), and thus do not support her hostile work environment claim.  *See Sletten v. LiquidHub, Inc.*, 13-cv-1146, 2014 WL 3388866, at \* 7 (S.D.N.Y. July 11, 2014) ("[W]hen the *only* offensive statements are learned of secondhand, they are insufficiently severe and persuasive . . . to support a claim for hostile work environment"); *see also Brown v. Coach Stores, Inc.*, 163 F.3d 706, 713 (2d Cir. 1998) (holding allegations that a supervisor made racist remarks "on occasion, and one such

comment was directed at [the plaintiff] . . . "fail[ed] to constitute discriminatory behavior that is sufficiently severe or pervasive to cause a hostile environment."); *McGrath v. Thompson Reuters*, 10-cv-4944, 2012 WL 2119112, at *15 (S.D.N.Y. Apr. 30, 2012) ("[T]wo stray comments are not sufficiently severe or pervasive to create a hostile work environment."), *report and recommendation adopted by* 2012 WL 2122325 (S.D.N.Y. June 12, 2012), *aff'd*, 537 F. App'x 1 (2d Cir. 2013). Similarly, a single instance of antisemitic graffiti by unidentified individuals, which was removed within five hours (*see* Compl., ¶ 60), while abhorrent, fails to rise to the level of a pervasive and abusive work environment. *See Davis v. N.Y. Dep't of Corr.*, 256 F. Supp. 3d 343, 353-54 (S.D.N.Y. 2017) (holding that racist graffiti does not rise to the level of pervasive and abusive working environment) (citing cases); *see also Williams v. County of Nassau*, 15-cv-7098, 2019 WL 2270518, at *6 (E.D.N.Y. May 28, 2019) (holding that observance of racist etchings of "KKK" and swastikas does not support a hostile work environment); *Duff v. Pristine Services, Inc.*, 19-cv-10423, 2021 WL 663981, at *8 (S.D.N.Y. Feb. 19, 2021) (holding that a single allegation of racial graffiti does not suffice to sustain a hostile work environment claim). Plaintiff also acknowledges that CUNY took action to respond to the graffiti by contacting the police to investigate. Compl., ¶ 96.

Plaintiff also alleges that CUNY failed to provide security for unspecified events she organized (*see* Compl., ¶¶ 79-82) and refused the request to display a menorah on campus during Hanukkah (*id.*, ¶¶ 76-78). This conduct is not the type of personal attack which supports a claim of hostile work environment. *See Thior v. JetBlue Airways*, 13-cv-6211, 2016 WL 5092567, at *4 (E.D.N.Y. Sept. 19, 2016) ("Hostile work environment claims tend to involve personal attacks and harassing comments directed at Plaintiff."). Nor has Plaintiff alleged that it was discriminatory or that other groups *were* provided with security. *See, e.g., Wallace v. Crab House, Inc.*, No. 21-cv-

15

5757, 2022 WL 1501089, at *6 (S.D.N.Y. May 12, 2022) (granting motion to dismiss where, *inter alia*, there were "no allegations that similarly situated individuals were treated differently"). Moreover, it is not sufficiently severe or pervasive to support a claim of hostile work environment. *See, e.g.*, *Spohn v. West*, 00-cv-0735, 2000 WL 1459981, at *4 (S.D.N.Y. Oct. 2, 2000) (claim that employer's holiday decorations were not equivalent was not severe and pervasive discriminatory intimidation which would give rise to a hostile work environment claim).

Even taken together, the incidents alleged by Plaintiff are not sufficiently severe or pervasive to support a hostile work environment claim. *See Alfano v. Costello*, 294 F.3d 365, 379 (2d Cir. 2002) (collecting cases involving a greater number of incidents with more overtly discriminatory overtones that were held insufficient to constitute a hostile work environment claim). As such, Plaintiff failed to demonstrate that she was subjected to a workplace that was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and her claim for hostile work environment must be dismissed. *See Williams*, 2017 WL 4402562, at *6.

### D. The Challenged Conduct Cannot Be Imputed to CUNY

While Plaintiff's Title VII claim should be dismissed due to a lack of severe and pervasive conduct towards Plaintiff based on her religion, Plaintiff's claim further fails because the challenged conduct cannot be imputed to CUNY. "Under Title VII, an employer's liability for such harassment may depend on the status of the harasser." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). The Second Circuit has recently interpreted that standard to provide that conduct of non-employees may only be imputed to the employer where "(1) the employer exercises a high degree of control over the behavior of the non-employee, and (2) the employer's own negligence

permits or facilitates that non-employee's discrimination." *Leroy v. Delta Air Lines*, 21-267-cv, 2022 WL 12144507, at *3 (2d Cir. Oct. 27, 2022). "The Second Circuit has declined to address whether student-on-teacher harassment can give rise to a hostile work environment claim for which an employer can be liable," but "courts in this Circuit have acknowledged that pervasive student-on-teacher harassment could satisfy a hostile work environment claim." *Karunakaran v. Borough of Manhattan Community College*, 18-cv-1-723, 2021 WL 535490, at *7 (S.D.N.Y. Feb. 12, 2021) (internal citations omitted). In these cases, courts impute conduct to the employer only where plaintiff "can show first that a hostile environment existed and second that the school board either provided no reasonable avenue of complaint or knew of the harassment and failed to take remedial action." *Id*. Plaintiff cannot meet this standard.

The Complaint fails to identify an alleged perpetrator for most of the conduct alleged, and therefore Plaintiff fails to allege facts sufficient to impute the conduct to CUNY. For example, Plaintiff fails to identify who distributed the "antisemitic fliers" supporting the Boycott, Divestment and Sanctions movement (Compl., ¶ 59), who "shouted vitriolic chants" at the Hunter College Faculty Senate meetings (*id*., ¶¶ 9, 64), who sent a "mass email featuring Plaintiff's picture" (*id*., ¶ 11), who defaced the posters of Israeli hostages[5] (*id*., ¶ 10). Plaintiff has not alleged that this conduct was perpetrated by a supervisor, co-worker, or a student, or that the conduct occurred because of CUNY's negligence, *see supra* p. 15, nor does she allege that it was perpetrated by someone over whom CUNY "exercised a high degree of control." *Troeger v. JetBlue Airways*, 23-cv-10859, 2024 WL 5146185, at *9, n.4 (S.D.N.Y. Dec. 17, 2024) (holding

---

[5] Plaintiff also failed to impute this incident to CUNY for the independent reason that she does not allege that CUNY failed to take appropriate remedial action when she reported that the fliers of the Israeli hostages were defaced with swastikas, as CUNY removed them within a few hours of Plaintiff's report and contacted the police. *See* Compl., ¶ 10, 96; *see also Williams*, 2019 WL 2270518, at *7 (holding that there was "nothing to support imputing liability . . . to the employer" where plaintiff saw etchings of swastikas and "KKK" which were removed within hours after their discovery).

that plaintiff could not impute harassing conduct of a third party to his employer where he had not alleged that his employer exercised control over the third party or its employees). Thus, Plaintiff fails to allege facts that would impute this conduct to CUNY.

With respect to the allegations of purported conduct by Plaintiff's co-workers, Plaintiff fails to allege that CUNY did not take remedial action, and therefore Plaintiff cannot impute the conduct to CUNY. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (where the purported harassing conduct is done by non-supervisory co-workers, "the employer will be held liable only for its own negligence, and the plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action."). For example, Plaintiff alleges that a professor of Sociology made two derogatory comments. *See* Compl., ¶ 67. Plaintiff concedes that CUNY investigated her complaint (*id.*) based on hearsay allegations; therefore, Plaintiff fails to allege that CUNY failed to take remedial action. *See Prince v. Cablevision Sys. Corp.*, 04-cv-8151, 2005 WL 1060373, at *11 (S.D.N.Y. May 6, 2005) (finding no basis to impute liability where employer conducted an investigation after learning of the conduct at issue). While Plaintiff takes issue with the alleged delay in interviewing the professor and the ultimate outcome of the investigation, that does not demonstrate that CUNY failed to take appropriate action. *See Roches-Bowman v. City of Mount Vernon*, 21-cv-5572, 2022 WL 3648394, at *6 (S.D.N.Y. Aug. 24, 2022) ("This resolution, though perhaps not the one that Plaintiff desired, demonstrates that the City took remedial action."); *see also* Compl., ¶ 67 (describing outcome of investigation).

Plaintiff similarly fails to allege that CUNY did not take appropriate remedial action in response to the protests which took place on campus. For example, in response to the student

protests which took place in February 2024, Plaintiff acknowledges that CUNY promised to review recorded footage to determine "whether [the conduct] was actionable," and ultimately concluded that the protests "did not meet the school's definition of intimidation and no action would be taken against the protesters."  *See id*., ¶¶ 88-90.  While Plaintiff may disagree with this outcome, she does not and cannot allege that CUNY failed to take action and thus cannot impute this conduct to CUNY.

Indeed, the Supreme Court has made clear that school administrators are accorded wide latitude in matters of campus governance, and that "courts should refrain from second-guessing the disciplinary decisions made by school administrators."  *Davis Next Friend LaShonda D. v. Monroe County Bd. Of Educ.*, 526 U.S. 629, 648 (1999); *see also Rodriguez*, 605 F.3d at 709. While certain speech surrounding the activism may have been offensive and repugnant (both to Plaintiff and others), as discussed above, the First Amendment provides broad protection for speech even when it is unwelcome and offensive.  *See supra* pp., 9-13.  Moreover, CUNY does not have control over non-university social media posts, thus alleged conduct based on social media posts (*see, e.g.,* Compl. ¶¶ 53-54) cannot be imputed to CUNY.  *See Nungesser v. Columbia University*, 244 F. Supp. 3d 345, 368 (S.D.N.Y. 2017).

Therefore, Plaintiff cannot impute the alleged conduct to CUNY, and her hostile work environment claim must be dismissed.

## II.    THE ELEVENTH AMENDMENT BARS PLAINTIFF'S STATE LAW CLAIMS

Plaintiff's claims for breach of contract (Count II), negligence, negligent supervision, and negligent retention (Count III), and negligent infliction of emotional distress (Count IV) are barred by the Eleventh Amendment and must be dismissed.  "The Eleventh Amendment bars a suit against a state or one of its agencies for money damages in federal court unless either Congress has clearly

abrogated the states' immunity or the state has unequivocally waived its immunity." *Edwards v. N.Y. State Off. of Mental Health*, 16-cv-1397, 2017 WL 666227, at *9 (E.D.N.Y. Feb. 20, 2017). "As an arm of the state, Defendant CUNY is entitled to invoke Eleventh Amendment Immunity." *Shibeshi v. City Univ. of New York,* 12-cv-1147, 2012 WL 12884419, at *1 (S.D.N.Y. 2012). As such, Eleventh Amendment immunity precludes Plaintiff's breach of contract and negligence claims against CUNY. *See Sank v. City Univ. of N.Y.*, 112 F. App'x 761, at *1 (2d Cir. 2004) ("[W]e conclude that, because CUNY and its colleges are an arm of the state, CUNY [is] immune from [] breach of contract claims pursuant to the Eleventh Amendment.") (internal quotation marks and citations omitted); *Shao v. City Univ. of N.Y.*, 12-cv-1566, 2014 WL 5038389, at *9 (S.D.N.Y. Sept. 30, 2014) (same); *Ohok v. Sullivan*, 10-cv-2547, 2011 WL 672420, at *5 (S.D.N.Y. Feb. 24, 2011) (dismissing negligent infliction of emotional distress claim against CUNY pursuant to Eleventh Amendment immunity). As a result, Plaintiffs' breach of contract and negligence claims should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

### III.    PLAINTIFF'S NELIGENCE CLAIMS ARE PRECLUDED BY NEW YORK STATE'S WORKERS' COMPENSATION LAW

Plaintiff's common law claims for negligence, negligent supervision, negligent retention, and negligent infliction of emotional distress (Count III and Count IV) are independently subject to dismissal because "common law negligence claims against [] CUNY, are 'precluded by New York Workers' Compensation Law, which provides the exclusive remedy for negligence claims against an employer.'" *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 2254-55 (E.D.N.Y. 2015) (quoting *Kelly v. N. Shore-Long Island Health Sys.*, 13-cv-1284, 2014 WL 2863020, at *11 (E.D.N.Y. June 22, 2014)). "The Second Circuit has affirmed dismissals by district courts of negligent supervision, hiring, and retention claims on the basis of New York State's Workers' Compensation Law," *id*., including negligence claims asserted on the basis of an alleged hostile

work environment. *See Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 138 (2d Cir. 2001) (citing *Torres v. Pisano*, 116 F.3d 625 (2d Cir. 1997)); *Naprstek v. Mariott Int'l, Inc.*, 21-cv-8560, 2024 WL 4449700, at *12 (S.D.N.Y. Oct. 9, 2024) (same).  Accordingly, Plaintiff's common law claims for negligence, negligent supervision, negligent retention, and negligent infliction of emotional distress (Count III and Count IV) must be dismissed for the independent reason that they are barred by New York Workers' Compensation Law.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the Complaint with prejudice and grant such other and further relief as it just and proper.

Dated: New York, New York
        March 10, 2025

Respectfully submitted,

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant CUNY*

By:    /s/ *Shaina Schwartz*
       Shaina L. Schwartz
       Assistant Attorney General
       28 Liberty Street
       New York, New York 10005
       (212) 416-8560
       Shaina.schwartz@ag.ny.gov

21

## <u>Certification Pursuant to Local Civil Rule 7.1 (c)</u>

In accordance with Local Civil Rule 7.1(c), I hereby certify that this memorandum of law contains 6,787 words, exclusive of caption and signature block and complies with the word count limit in that Rule, as established using the word count function of Microsoft Word.

/s/ <i>Shaina Schwartz</i>
Shaina Schwartz
Assistant Attorney General
