**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LEAH GARRETT,

            Plaintiff,

        v.

CITY UNIVERSITY OF NEW YORK,

            Defendant.

Civil Case No.: 24-cv-9710 (VSB)

***ORAL ARGUMENT REQUESTED***

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO CITY UNIVERSITY OF NEW YORK'S MOTION TO DISMISS THE COMPLAINT**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 4

    A.   Plaintiff Alleges Rampant Antisemitism at CUNY Hunter, Including Threats and
          Harassment by Students and Faculty Directed at Her, Which Caused Plaintiff to Fear for
          Her Safety and Interfered with Her Work ............................................................................. 4

    B.   Plaintiff Alleges CUNY Hunter Knew About but Failed to Take Remedial Measures to
          Address Antisemitism on Campus ....................................................................................... 6

LEGAL STANDARD ............................................................................................................. 7

ARGUMENT ......................................................................................................................... 7

   I.  PLAINTIFF ALLEGES SUFFICENTLY A HOSTILE WORK ENVIRONMENT CLAIM
      UNDER TITLE VII. ......................................................................................................... 7

     A.   The Complaint Adequately Alleges a Hostile Work Environment Based on Plaintiff's
           Religion ........................................................................................................................... 8

     B.   The Complaint Alleges a Hostile Work Environment Based on Incidents and Conduct
           That the First Amendment Does Not Protect ................................................................ 12

     C.   The Alleged Conduct is Sufficiently Severe or Pervasive to State a Hostile Work
           Environment Claim ......................................................................................................... 15

     D.   The Complaint's Allegations Satisfy the Standard to Impute the Conduct to CUNY .. 22

  II.   PLAINTIFF RESERVES THE RIGHT TO RE-FILE HER STATE LAW CLAIMS IN
       THE NEW YORK COURT OF CLAIMS. .................................................................... 26

CONCLUSION .................................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alfano v. Costello,*
    294 F.3d 365 (2d Cir. 2002)...................................................................................19

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................................7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................................................7

*Brown v. Coach Stores, Inc.,*
    163 F.3d 706 (2d Cir. 1998)..................................................................................19

*Davis v. N.Y. Dep't of Corr.,*
    256 F. Supp. 3d 343 (S.D.N.Y. 2017)...................................................................19

*De Souza v. Planned Parenthood Fed'n of Am., Inc.,*
    2022 U.S. Dist. LEXIS 101757 (S.D.N.Y. June 7, 2022).....................................20

*Doe v. St. Lawrence Univ.,*
    No. 8:23-cv-00426, 2024 U.S. Dist. LEXIS 44870 (N.D.N.Y. Mar. 14, 2024) .......8

*Duff v. Pristine Serv., Inc.,*
    No. 19-cv-10423, 2021 U.S. Dist. LEXIS 31210 (S.D.N.Y. Feb. 19, 2021)...........19

*Fiss v. Cal. Coll. of the Arts,*
    No. 24-cv-03415-HSG, 2025 U.S. Dist. LEXIS 7456 (N.D. Cal. Jan. 14, 2025) ...18

*Francis v. Kings Park Manor, Inc.,*
    992 F.3d 67 (2d Cir. 2021).....................................................................................7

*Ganny v. FJC Sec. Servs.,*
    No. 15-CV-1965 (FB), 2016 U.S. Dist. LEXIS 125098 (E.D.N.Y. Sep. 13, 2016)...........21

*Gartenberg v. Cooper Union for the Advancement of Sci. & Art,*
    2025 U.S. Dist. LEXIS 20844 (S.D.N.Y. Feb. 5, 2025)............................... *passim*

*Harding v. Dorilton Cap. Advisors LLC,*
    635 F. Supp. 3d 286 (S.D.N.Y. 2022)...................................................................16

*Harris v. Forklift Sys., Inc.,*
    510 U.S. 17 (1993).............................................................................................7, 8

*Idlewild Bon Voyage Liquor Corp. v. Rohan,*
    194 F. Supp. 3 (S.D.N.Y. 1961)..............................................................................9

*Jungels v. State Univ. Coll.*,
    922 F. Supp. 779 (W.D.N.Y. 1996) ...................................................................27

*Kestenbaum v. President & Fellows of Harvard Coll.*,
    743 F. Supp. 3d 297 (D. Mass. 2024) ..............................................................18

*Legg v. Ulster County.*,
    979 F.3d 101 (2d Cir. 2020) .............................................................................22

*Levine v. Sec'y of Health, Educ. & Welfare*,
    529 F. Supp. 333 (W.D.N.Y. 1981) ....................................................................9

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015) ...............................................................................8

*Makhsudova v. City of New York*,
    No. 20 Civ. 10728 (KPF), 2022 U.S. Dist. LEXIS 89580 (S.D.N.Y. May 18, 2022) ............17

*McGrath v. Reuters*,
    No. 10-cv-4944, 2012 U.S. Dist. LEXIS 81447 (S.D.N.Y. Apr. 30, 2012) ..........................19

*Menaker v. Hofstra Univ.*,
    935 F.3d 20 (2d Cir. 2019) ...............................................................................23

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) ..........................................................................................14

*Nungesser v. Columbia Univ.*,
    244 F. Supp. 3d 345 (S.D.N.Y. 2017) .........................................................23, 24

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007) ..........................................................................7, 20

*Prince v. Cablevision Sys. Corp.*,
    No. 04-cv-8151, 2005 U.S. Dist. LEXIS 8147 (S.D.N.Y. May 6, 2005) ...............................26

*Roches-Bowman v. City of Mount Vernon*,
    No. 21-CV-5572 (KMK), 2022 U.S. Dist. LEXIS 152465 (S.D.N.Y. Aug. 24, 2022) ...........26

*Saaidi v. CFAS, LLC*,
    740 F. Supp. 2d 357 (N.D.N.Y. 2010) .............................................................12

*Sank v. City Univ. of N.Y.*,
    No. 94 Civ. 0253 (RWS), 2002 U.S. Dist. LEXIS 5928 (S.D.N.Y. Apr. 2, 2002) .................27

*Schwapp v. Town of Avon*,
    118 F.3d 106 (2d Cir. 1997) .............................................................................21

*Sletten v. LiquidHub, Inc.*,
 No. 13-cv-1146, 2014, U.S. Dist. LEXIS 94697 (S.D.N.Y. July 11, 2014) ........................... 19

S*mith-Crockett v. CT Tech. High Sch.*,
 No. 3:18-cv-01640 (VLB), 2019 U.S. Dist. LEXIS 250383 (D. Conn. Sep. 24, 2019) ......... 18

*Spohn v. West*,
 No. 00-cv-0735, 2000 U.S. Dist. LEXIS 14290 (S.D.N.Y. Oct. 3, 2000) .............................. 19

*Terry v. Ashcroft*,
 336 F.3d 128 (2d Cir. 2003) ............................................................................................ 8, 16

*Thior v. Jetblue Airways, Inc.*,
 No. 13-cv-6211, 2016 U.S. Dist. LEXIS 127388 (E.D.N.Y. Sept. 19, 2016) ....................... 19

*Troeger v. JetBlue Airways*,
 No. 23-cv-10859, 2024 U.S. Dist. LEXIS 228987 (S.D.N.Y. Dec. 17, 2024) ...................... 26

*United States v. Rahman*,
 189 F.3d 88 (2d Cir. 1999) ................................................................................................... 14

*Wallace v. Crab House, Inc.*,
 No. 21-cv-5757, 2022 U.S. Dist. LEXIS 86345 (S.D.N,Y. May 12, 2022) ........................... 19

*Wang v. Bethlehem Cent. Sch. Dist.*,
 No. 1:21-CV-1023, 2022 U.S. Dist. LEXIS 140153 (N.D.N.Y. Aug. 8, 2022) ...................... 9

*Zeno v. Pine Plains Cent. Sch. Dist.*,
 702 F.3d 655 (2d Cir. 2012) ................................................................................................. 25

### RULES

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 18, 25

### STATUTES

42 U.S.C. § 2000e ................................................................................................................... 7

Civil Rights Act ...................................................................................................................... 7

### OTHER AUTHORITIES

H.R. 894, 118th ..................................................................................................................... 10

*Prince v. Cablevision Sys. Corp.*,
 No. 04-cv-8151, 2004 U.S. Dist. Ct. Pleadings LEXIS 14825 (S.D.N.Y. Oct. 18,
 2004) ..................................................................................................................................... 26

Plaintiff Leah Garrett ("Plaintiff"), respectfully submits this memorandum of law in opposition to Defendant City University of New York's ("CUNY") Motion to Dismiss the Complaint (Dkt. 12).[1]

## PRELIMINARY STATEMENT

Plaintiff Dr. Leah Garrett, Director of Jewish Studies at CUNY Hunter, alleges that rather than address escalating antisemitism on campus, CUNY chose to look away; and by virtue of its conduct, created a hostile work environment. In response to Plaintiff's repeated complaints concerning threats and harassment following the Hamas attack in Israel on October 7, 2023, CUNY ignored multiple incidents of antisemitism by falsely characterizing the conduct and behavior of its faculty and students as mere "political speech." Now, in an attempt to avoid liability for its actions, CUNY moves to dismiss Plaintiff's claims using the same rationalization and trivialization of antisemitism that forced her to bring this lawsuit in the first place.

CUNY's Motion whitewashes the well-pleaded allegations of the Complaint, which describes a campus where: posters advocating the return of hostages taken by Hamas were vandalized with swastikas; posters were displayed showing a Jewish Star of David dripping with blood, and declaring "Israel is a state built to put Jews over all others"; demonstrators targeted Hillel for no reason other than that it is a Jewish organization; angry mobs of students accosted a rabbi at a film screening to the point where he had to flee (escorted by security); Jews advocating for the existence of a Jewish state were told they have no place on campus and in some instances were physically assaulted or otherwise threatened with violence; the Hamas attack on October 7th was celebrated as an "act of resistance"; demonstrators commandeered public spaces on campus

---

[1] Unless otherwise defined herein, capitalized terms have the meanings provided in the Complaint (ECF No. 1).

and blocked elevators; and Plaintiff has been specifically targeted and "doxed" in student groups' campus-wide emails and social media posts, linking her to "racist Zionist networks." These allegations – which must be taken as true on this motion – are more than enough to satisfy the pleading requirement to state a claim under Title VII.

CUNY skirts the fact that it has allowed rampant antisemitism to fester on its campus by arguing principally that the Complaint alleges behavior and conduct that amounts merely to "pure speech," protected by the First Amendment and pro-Palestinian "activism that does not constitute actionable harassment." *See* Mem. at 8 and 10. These arguments recently were rejected at the motion to dismiss stage in *Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, 2025 U.S. Dist. LEXIS 20844 (S.D.N.Y. Feb. 5, 2025) (Cronan, J.) ("*Gartenberg I*"). In *Gartenberg I*, Jewish students attending The Cooper Union filed suit after the college failed to respond adequately to an antisemitic demonstration on October 25, 2023, that devolved into an angry mob scene at the campus library. In denying a motion to dismiss, the court found that alleged chants and vandalism involving the slogans "long live the intifada" and "from the river to the sea," were sufficient to plead a discriminatory (*i.e.,* antisemitic) motive. The court also found that the use of these "code words" or phrases did not constitute "pure speech," as a matter of law (as Cooper Union argued), and thus could support a Title VI claim. Here, CUNY's arguments cannot be reconciled with *Gartenberg I,* especially given that the Complaint contains numerous allegations detailing how students and faculty at CUNY engaged in exactly the same kind of conduct, and used exactly the same phrases, as alleged in *Gartenberg I.*

CUNY's remaining arguments for dismissal of Plaintiff's Title VII claim are equally without merit.

*First*, CUNY's argument that Plaintiff must be the specific target of antisemitic behavior is wrong in multiple ways.  As an initial matter, taking the allegations in the Complaint in its entirety, the facts pleaded show that Plaintiff was *personally* the victim of, and subjected to, antisemitism.  Moreover, as a matter of law, Plaintiff need only allege she suffered a hostile work environment because of her religion, not that all of the offensive conduct was specifically directed at her.

*Second*, CUNY makes the specious argument that, in order to impute the behavior and conduct of its faculty and students to CUNY, Plaintiff was required to plead the identity of each perpetrator and explain how CUNY exercised control over them.  That is not the law.  Nevertheless, the Complaint alleges that the perpetrators were indeed CUNY faculty and students, and that CUNY failed to take proper remedial measures, which is sufficient, as pleaded, to impute their conduct to CUNY.

*Third,* CUNY's assertion that Plaintiff has not adequately alleged that CUNY failed to take proper remedial measures is belied by the detailed allegations of CUNY administrators repeatedly turning a blind eye to the incidents of antisemitic harassment Plaintiff brought to their attention on numerous occasions, and even when the harassment occurred directly in front of them.  Plaintiff's allegations of CUNY's failure to take proper remedial measures is corroborated by the findings of an independent investigation conducted by former Chief Judge of the New York Court of Appeals, Jonathan Lippman.

As set forth below, CUNY provides no basis for dismissing this lawsuit as a matter of law at the pleading stage.  Instead, CUNY's motion demonstrates that it will foist any argument to justify its complete indifference to the hostile environment it has created and let persist on campus after years of antisemitic conduct and behavior.  This is not a case predicated on Plaintiff taking

offense to political views different from her own.  As an academic, Plaintiff shares CUNY's stated value of cultivating a community where students and faculty are free to engage in a civil exchange of ideas and to benefit from a diversity of perspectives.  But CUNY has done just the opposite.  It has allowed CUNY Hunter to become a hostile work environment for Plaintiff, where antisemitic harassment and threatening conduct has severely impeded her ability to perform her job responsibilities and participate in activities on campus.

For these reasons, and those set forth herein, CUNY's Motion to Dismiss Plaintiff's Title VII claim should be denied.[2]

## STATEMENT OF FACTS

**A.    Plaintiff Alleges Rampant Antisemitism at CUNY Hunter, Including Threats and Harassment by Students and Faculty Directed at Her, Which Caused Plaintiff to Fear for Her Safety and Interfered with Her Work.**

The Complaint is replete with allegations of antisemitic harassment and vandalism at CUNY Hunter dating back to at least 2015, when students chanted "Jews out of CUNY" and "Death to Jews."  Compl. ¶ 46.  Circumstances for Jews at CUNY Hunter became particularly dire in the aftermath of October 7th, and it is the conduct in that period that forms the basis for Plaintiff's claims.  While ostensibly branding Plaintiff as the face of CUNY Hunter's efforts to combat antisemitism, CUNY administrators instead ignored or dismissed Plaintiff's concerns and complaints summarily and allowed antisemitism to spiral out of control to this day.  *Id.* ¶¶ 48-51.

The conduct Plaintiff brought to the attention of CUNY Hunter administrators – elaborated in detail in Plaintiff's over-50-page Complaint – was unambiguously antisemitic.  CUNY's characterization that Plaintiff seeks to hold CUNY liable for failing to quash "pro-Palestinian

---

[2] As discussed further below, because CUNY will not consent to jurisdiction in federal court, Plaintiff intends to voluntarily dismiss her state law claims, and reserves the right to pursue those claims in the New York State Court of Claims.

advocacy" (Mem. at 2) is belied expressly by Plaintiff's allegations that the demonstrators targeted Jews specifically, not just Israel's response to October 7th. Posters defaced with swastikas and demonstrators targeting Hillel are two unequivocal examples of actionable antisemitism, in addition to alleged threatening and sometimes violent conduct. Compl. ¶¶ 60, 63, 88-90. CUNY likewise ignores allegations detailing Plaintiff's admonishment to CUNY Hunter's administration about the anticipated inflammatory impact of an on-campus film screening concerning the purported weaponization of antisemitism by Jews to silence pro-Palestinian voices. *Id.* ¶ 13. Plaintiff implored President Kirschner to "balance the presentation" by inviting a panelist capable of defending the pro-Israel perspective in a post-event discussion of the film. Kirschner invited a local rabbi to participate, and the event devolved into a "mob attack" on the rabbi who was forced to flee, escorted by security. *Id.* ¶¶ 72-75.

Plaintiff feared for her safety, and on multiple occasions requested that CUNY Hunter provide additional safety for her and other Jewish faculty and students, particularly for events Plaintiff hosted on campus for members of the Jewish community. *Id.* ¶¶ 11, 79-82. But these requests went unmet. *Id.* Plaintiff was forced to cancel class and hold her monthly speaker series, which featured speakers on matters related to Judaism and Israel, on Zoom instead of in-person. *Id.* ¶¶ 81, 145. Moreover, the protesters "often amplified their hateful rhetoric" with megaphones, disrupting Plaintiff's ability to work. *Id.* ¶ 8.[3]

As Director of Jewish Studies, Plaintiff is a particularly visible figure within the Jewish community at CUNY Hunter, making her a target for antisemitic harassment, including when "a mass email was sent [anonymously] to the CUNY Hunter community featuring Plaintiff's picture,

---

[3] *See Gartenberg,* 2025 U.S. Dist. LEXIS 20844, at *36-37 ("[O]ffensive messages conveyed in a manner that does not conform to reasonable social expectations (for instance, by vandalizing a hallway) . . . is much more likely to be received as . . . an effort to harass").

and inviting anti-Israel groups to target her." *Id.* ¶ 11. *See also id.* ¶ 98. The same offending organization[4] also posted Plaintiff's photograph on social media as an intimidation tactic, commonly known as "doxing." Compl. ¶¶ 11, 98. Plaintiff notified CUNY's President and Dean of Diversity and Compliance that "[b]ecause of the email I received this morning in which I have been identified in a way that could make me unsafe, I've been forced to cancel my class today," emphasizing "[i]n my twenty years of teaching, I've only ever canceled a class once before, due to sickness." *Id.* ¶ 98. "Despite the gravity of the situation, no action was taken to protect Plaintiff's safety or that of her students and colleagues." *Id.* Plaintiff also learned that one of her fellow faculty members made overtly antisemitic comments about her "pretending to be a Jew" to "sell her books at synagogues with rich Jews." *Id.* ¶ 67. In response, Plaintiff notified the Dean of the School of Arts and Sciences, who acknowledged that this was "not the first time" this faculty member made antisemitic comments, but – notwithstanding Plaintiff filing a formal complaint – it took months for CUNY to interview the offending faculty member, and ultimately informed Plaintiff (only after she followed up) that the investigation was dropped. *Id.*

**B.     Plaintiff Alleges CUNY Hunter Knew About but Failed to Take Remedial Measures to Address Antisemitism on Campus.**

The Complaint alleges a pattern in which Plaintiff regularly escalated concerns regarding antisemitic incidents on campus to CUNY Hunter administrators, which were either met with silence, or empty promises that some investigation would be undertaken (but never was). *See* Sections I(D)(i) and (ii), *infra*. CUNY Hunter made its priorities clear when it suspended in-person educational activities, including classes, on campus in deference to a "Day of Rage" protest by an

---

[4] The "Not in Our Name" organization represents that it has numerous "CUNY Signatories" including about a dozen CUNY faculty members, as well as CUNY students and alumni. *See* https://amchainitiative.org/wp-content/uploads/2022/07/CUNY-Not-In-Our-Name-Statement-7.11.22.pdf

antisemitic mob—in effect, sending a clear message to Jewish students and faculty that they needed to stay home because the university would not take measures to protect their safety on campus. *Id.* ¶ 92.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  On a motion to dismiss, the reviewing court must "accept all factual allegations as true and draw all reasonable inferences in plaintiff's favor." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021).

## ARGUMENT

I.    **PLAINTIFF ALLEGES SUFFICENTLY A HOSTILE WORK ENVIRONMENT CLAIM UNDER TITLE VII.**

"To state a claim for a hostile work environment in violation of Title VII [of the Civil Rights Act], a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive - that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff  subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's" protected status.[5]  *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citation and quotations omitted). Objective severity "can be determined only by looking at all of the circumstances… [such as] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Patane*, 508

---

[5] Title VII prohibits employment discrimination based on race, color, religion, sex, and national origin.  42 U.S.C. § 2000e.

F.3d at 113.  "However, as the Second Circuit has recognized, a single incident of egregious conduct can create a hostile work environment." *Doe v. St. Lawrence Univ.*, No. 8:23-cv-00426 (BKS/DJS), 2024 U.S. Dist. LEXIS 44870, at *43 (N.D.N.Y. Mar. 14, 2024).  "So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, . . . there is no need for it also to be psychologically injurious", although "[c]ertainly Title VII bars conduct that would seriously affect a reasonable person's psychological well-being." *Harris*, 510 U.S. at 17.

The Second Circuit has "repeatedly cautioned against setting the bar too high." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).  Rather, the Second Circuit has held that Title VII claimants "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

### A.    The Complaint Adequately Alleges a Hostile Work Environment Based on Plaintiff's Religion.

CUNY first argues that the conduct forming the basis of Plaintiff's hostile work environment claim was not "prompted" by Plaintiff's religion (Judaism).[6]  Mem. at 6.  CUNY asserts—contrary to the factual assertions that must be accepted as true—that "[a]lmost all of the conduct alleged in the Complaint is activism relating to the conflict between Israel and Hamas." Mem. at 5.  But that argument ignores the well-plead allegations of conduct that would be classified as antisemitism by any reasonable person.  In fact, Plaintiff's allegations of an antisemitic (and thus discriminatory) motive underlying the alleged conduct are indistinguishable from allegations

---

[6] For the sake of clarity, this Opposition tracks the sequence of arguments in the Motion.

that this court found sufficient to support a Title VI claim[7] based on antisemitism at The Cooper Union just over two months ago.[8]

The Cooper Union made the same argument that CUNY makes here—that the alleged conduct was not motivated by animus towards Jews, but instead was mere criticism of Israel and/or its policies, and a show of solidarity for the Palestinian cause. *Gartenberg*, 2025 U.S. Dist. LEXIS 20844, at *41. That argument was rejected because the complaint was "replete with words and phrases that [plaintiff] alleges are thinly veiled code words designed to activate conscious or subconscious [antisemitic] concepts and frames." *Id.* at *44-45 (quotations omitted). Noting that "there are no magic words or phrases needed to show that harassment was motivated by a protected characteristic" (*id.* at *44), the court found that when "[u]nderstood in the light most favorable to [plaintiff], such speech on its face goes beyond mere criticism of Israeli government policy or of Zionist ideology, and instead sends a message that Jews as a class do not belong in Israel while justifying and encouraging violence against those Jews who do live there." *Id.* at *42. The court in *Gartenberg I* proceeded to classify "pro-Palestinian" slogans identical to those alleged here as the kind of "thinly veiled code words" that supported the court's conclusion that "**such phrases support at least a plausible inference of animus towards Jews**." *Id.* at *45 (emphasis added). In so doing, the court emphasized that "at this [motion to dismiss] stage of the case, [t]he test is

---

[7] "Title VI and Title VII have almost identical requirements, employ identical analytical frameworks, and employ the same pleading requirements at the motion to dismiss stage." *Wang v. Bethlehem Cent. Sch. Dist.*, No. 1:21-CV-1023 (LEK/DJS), 2022 U.S. Dist. LEXIS 140153, at *92 (N.D.N.Y. Aug. 8, 2022)

[8] While one district judge's decision is not binding on another, courts in this District have long recognized the value of consistency, particularly where the facts and legal arguments are virtually indistinguishable. *See Idlewild Bon Voyage Liquor Corp. v. Rohan*, 194 F. Supp. 3, 5 (S.D.N.Y. 1961) ("[t]he law enunciated by the first judge is not merely his individual opinion; it is the law of the District Court, to be followed, upon similar facts, until a different rule is laid down by a court of superior jurisdiction.") *See also Levine v. Sec'y of Health, Educ. & Welfare,* 529 F. Supp. 333, 336 (W.D.N.Y. 1981).

whether the complaint is plausible, not whether it is less plausible than an alternative explanation." *Id.* at *47.

A comparison of the allegations supporting a discriminatory motive in *Gartenberg I* and in this action illustrates that a finding that Plaintiff did not adequately plead this element would be inconsistent and irreconcilable:

| Allegations in *Gartenberg I* that the court found sufficient to plead a discriminatory motive | Some (but not all) of Plaintiff's allegations supporting a discriminatory motive |
| --- | --- |
| Students chanting "long live the <u>intifada</u>" | "[T]he clubs posted antisemitic content on their social media accounts, including calling to 'Globalize the <u>Intifada</u>' and to escalate by 'any means necessary.' The groups also posted similar content on CUNY Hunter's bulletin boards reserved for club events." Compl. ¶ 62. |
| Students chanting "<u>resistance</u> is justified" | On November 17, 2023, several CUNY Hunter student clubs signed an open letter praising the terror attack against Israel as an "act of <u>resistance</u>." *Id.* |
| Students chanting "<u>from the river to the sea, Palestine will be free</u>"[9] | "Chants and slogans that have been popularized after October 7, 2023, including at CUNY Hunter" include "'<u>from the river to the sea, Palestine will be free</u>'". *Id.* ¶ 28. |
| Students chanting "it is right to rebel" | At an October 12, 2023 rally, "[t]he protesters' chants called for violence against Jews and the destruction of the Jewish state". *Id.* ¶ 55. |
|  | Student group posted on social media "Zionism has no place at an academic institution." *Id.* ¶ 56. |
|  | On November 10, 2023, Plaintiff reported to CUNY "fliers [that] claimed that 'Israel is a state built to put Jews over all others'". *Id.* ¶ 59. |

---

[9] The phrase "from the river to the sea, Palestine will be free" "refers to the land between the Jordan River and the Mediterranean Sea, where roughly half of the world's Jewish population resides" and "has recently been described in a bipartisan resolution passed by the House of Representatives as antisemitic precisely because it suggests the eradication of the State of Israel and the Jewish people." *Gartenberg*, 2025 U.S. Dist. LEXIS 20844, at *41,*45-46 (quotations omitted) (citing H.R. 894, 118th Cong. (2023)).

| | |
|---|---|
| | Swastikas were drawn on the faces of Jewish hostages taken by Hamas." *Id.* ¶ 60. |
| | Demonstrators displayed signs with "depictions of blood dripping from the Star of David." *Id.*¶ 63. |
| | Protestors "called for the expulsion of Israelis and all student or faculty members who support of the state of Israel." *Id.* |
| | Comment by CUNY Hunter professor that Plaintiff "is pretending to be a Jew so she can sell her books," and that she "sells her books at synagogues with rich Jews." *Id.* ¶ 67. |
| | Protestors targeted Hillel—a student organization dedicated to fostering a Jewish community on campus— with hateful slogans such as, 'Hillel, Hillel, what do you say, how many killers did you feed today?'" *Id.* ¶ 88. |
| | "CUNY Hunter student sent an email to a Jewish professor . . . stating, 'I believe that real Satan worshipers are better than [Jews], more moral.'" *Id.* ¶ 99. |

The discriminatory motive underlying each of these allegations is overwhelmingly apparent; the allegation concerning swastikas alone demonstrates the absurdity of CUNY's contention that Plaintiff alleges only pro-Palestinian or anti-Israel activism, and not antisemitism. The swastika is widely recognized as the symbol adopted by Adolf Hitler for the Nazi Party.  It is a symbol that has nothing to do with the pro-Palestinian cause.  No reasonable person would characterize such an image as mere "activism relating to the conflict between Israel and Hamas." Mem. at 5.  Yet, that is precisely and remarkably what CUNY, represented by the Attorney General's Office of the State of New York, does in this case; indeed, it is CUNY's *lead argument*. Moreover, the demonstrations at Hillel (*see* Compl. ¶¶ 88 and 98) may have been anti-Israel or pro-Palestine, but they were also antisemitic because they targeted Hillel for no reason other than that it is a Jewish organization.  All of these allegations together, accepted as true, are more than enough to allege a hostile work environment based on Plaintiff's religion, particularly in light of *Gartenberg I*.

Finally, courts have recognized that intent is a fact-intensive element, often rejecting challenges to plaintiffs' allegations of intent at the motion to dismiss stage. *Saaidi v. CFAS, LLC*, 740 F. Supp. 2d 357, 363 (N.D.N.Y. 2010) ("In the fact-intensive context of a discrimination action, direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions.") *See also Gartenberg*, 2025 U.S. Dist. LEXIS 20844, at *59 ("Although it may ultimately turn out that the protestors' conduct . . . was not in any part motivated by animus towards Jews . . . the interpretation of any ambiguous conduct is properly an issue for the jury.") The conduct alleged here was motivated by animus towards Jews, but to the extent there is any ambiguity, the factfinder should resolve it.

### B. The Complaint Alleges a Hostile Work Environment Based on Incidents and Conduct That the First Amendment Does Not Protect.

CUNY next argues that the conduct alleged in the Complaint is protected speech. Mem. at 8. In *Gartenberg I* this court rejected the same argument based on substantially similar factual allegations. The court found it was "plausible" that the incidents at The Cooper Union—including "antisemitic vandalism and graffiti"—were "physically threatening or humiliating to the Jewish students" and thus went "beyond . . . instances of pure political speech." *Gartenberg*, 2025 U.S. Dist. LEXIS 20844, at *52-57.[10] This District has therefore already held that conduct identical (if not less severe than that alleged to have occurred at CUNY) is not "pure political speech" and is sufficient – at least at this stage of the proceedings – to support a hostile educational environment (or, in this case, a hostile work environment) claim.

---

[10] Notably, the court in *Gartenberg I* described the alleged conduct as "a touch more subtle than displaying a symbol like a swastika," *i.e., less severe* than the allegations in this case, which include swastikas. Compl. ¶ 60.

The court in *Gartenberg I* distinguished between alleged conduct constituting "pure speech on matters of public concern," which it found did not support a Title VI claim,[11] and alleged conduct that plausibly could be "physically threatening or humiliating" to the protected class, which *did* support a Title VI claim.  *Gartenberg*, 2025 U.S. Dist. LEXIS 20844, at *52-57.  The allegations deemed "beyond . . . instances of pure political speech" (*id.*) are indistinguishable from those alleged here:

| Allegations of conduct at Cooper Union that the court found went beyond pure speech | Some (but not all) of Plaintiff's allegations of conduct that likewise went beyond pure speech |
| --- | --- |
| 20-minute incident in which Jewish students huddled inside the library while demonstrators attempted to enter the library, banged on and rattled the locked doors and shouted  "let us in" and pro-Palestinian and anti-Israel chants. *Id.* at *53. | "[W]hen students organized another 'Day of Rage' event on May 6, 2024, CUNY Hunter failed to provide security to ensure classes could continue safely in-person, instead opting to hold classes remotely and shut down educational activities on campus."  Compl. ¶ 145. |
| Vandalizing and tearing down posters with names and photographs of October 7th hostages taken by Hamas, and vandalizing bathroom with slogan "from the river to the sea" in font resembling *Mein Kampf. Id.* at *56. | *See* pp. 10-11, *supra*, for additional allegations of antisemitic vandalism, chants and posters at CUNY, including swastikas drawn on posters of October 7th hostages taken by Hamas. |
| Signs denigrating Jews in Israel as "settlers" and justifying the Hamas attacks on October 7th as a "reaction" to "settler colonization." *Id.* | Harassment of rabbi at film screening, culminating in the rabbi being "led away from the room for his safety with security by his side as the crowd continued to hurl abuse at him." *Id.* ¶¶ 72-75 (describing "mob attack on the rabbi"). |
|  | "At least one student was physically assaulted, as his pro-Israel sign was forcibly taken from him." *Id.* |

---

[11] The court recognized, however, that allegations of pure speech "may properly be considered for purposes of" the "discriminatory-intent element."  *Gartenberg*, 2025 U.S. Dist. LEXIS 20844, at *52.

The Complaint includes allegations concerning the physical assault of a student whose pro-Israel flag was forcibly taken from him (*id.* ¶ 63) and "violent imagery" and slogans (*e.g.,* "Jewish symbols dripping with blood," swastikas and calls for the expulsion of Zionists, *see id.* ¶ 8).   It is well-settled that "a line exists between expressions of belief, which are protected by the First Amendment, and threatened or actual uses of force, which are not." *United States v. Rahman*, 189 F.3d 88, 115 (2d Cir. 1999).  *See also NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 916 (1982) ("The First Amendment does not protect violence").  Moreover, Plaintiff alleges throughout the Complaint that she and other members of the Jewish community at CUNY Hunter feared for their safety, and that the antisemitic conduct interfered with their ability to participate in classes and other activities on campus:

- Plaintiff was forced to move events to Zoom after CUNY Hunter reneged on its promise to provide security. Compl. ¶ 145.

- "The environment became so hostile on campus that Plaintiff felt compelled to assess the campus environment before daring to show up for work." *Id.* ¶ 63.

- Plaintiff and other Jewish faculty were forced remove their office numbers from CUNY Hunter directories and name plates next to their offices.  *Id.* ¶¶ 14 and 116.

- Plaintiff felt unsafe attending Faculty Senate meetings.  *Id.* ¶ 65.

- A student who raised concerns about antisemitic harassment to Plaintiff "finished her studies remotely and chose not to attend graduation in person due to fear of further harassment." *Id.* ¶ 70.

- Plaintiff pleaded with CUNY Hunter administrators to take action, reporting "that she could hear the protests from her 13th-floor office and emphasizing how they were creating an intimidating and threatening environment." *Id.* ¶ 86.

- During a protest occupying the main entrance to CUNY Hunter, and amid chants directed at Hillel, Plaintiff "[f]ear[ed] for her safety in the face of such hostility" and "Plaintiff and many Jewish students felt compelled to leave the campus." *Id.* ¶ 88.

- Plaintiff was specifically targeted (or doxed) in a mass email and social media post, forcing her to cancel her classes out of fear for her safety.  *Id.* ¶ 98.

In its Opposition, CUNY remarkably fails to address these allegations and its attempt to distinguish *Gartenberg's* allegations as somehow "far more egregious than those pled here" is

conclusory at best.  Both Gartenberg and Plaintiff alleged conduct at their respective colleges that was physically threatening and humiliating to the Jewish population and caused Jewish students and faculty to fear for their safety.  The kind of conduct alleged by the plaintiffs in *Gartenberg I* and by Plaintiff here is "not reasonably calculated to contribute to public discourse" and lacks "the degree of legitimate expressive purpose that might merit the kind of First Amendment protection that has long been recognized in the academic arena." *Gartenberg*, 2025 U.S. Dist. LEXIS 20844, at *58. (quotations omitted).

Notably, Judge Cronan emphasized the allegation that Cooper Union's president "herself was sufficiently frightened that she locked her office door to keep the demonstrators out." *Id.* at *53.  Likewise here, the Complaint alleges that CUNY Hunter administrators acknowledged that the demonstrations posed a serious security threat despite failing to take appropriate or sufficient steps to confront that threat.   Compl. ¶ 89 (alleging CUNY Hunter President acknowledged protests targeting Hillel "reached a new level of aggression").   Further, CUNY's decision to suspend in-person educational activities in deference to the "Day of Rage" (*id.* ¶ 92) mirrors The Cooper Union's alleged response to the library mob scene—telling Jewish students they should have hidden within the library or left the building—which the court was "dismayed by." *Gartenberg*, 2025 U.S. Dist. LEXIS 20844, at *54-55.  Both The Cooper Union and CUNY Hunter addressed legitimate fears held by Jewish students and faculty by putting the burden *on them* (and not the college administrators) to take measures to protect themselves by hiding within or fleeing campus.

### C.    The Alleged Conduct is Sufficiently Severe or Pervasive to State a Hostile Work Environment Claim.

Acknowledging that at least some of the alleged conduct is *not* "pure protected speech," CUNY argues that the alleged conduct is nevertheless insufficient to support a hostile work

environment claim.  But "'[d]etermining whether conduct is severe or pervasive enough to create a hostile [] environment involves a question of fact and is generally inappropriate to determine at the pleadings stage of a litigation.'" *Gartenberg*, 2025 U.S. Dist. LEXIS 20844, at \*48 (quoting *Harding v. Dorilton Cap. Advisors LLC*, 635 F. Supp. 3d 286, 301 (S.D.N.Y. 2022)).  "A motion to dismiss a hostile environment claim predicated on a failure to plausibly allege severe or pervasive harassment is thus properly denied when, based on the facts alleged in the Complaint, the defendant is not obviously free from potential liability."  *Id.* at \*48-49 (quotations omitted). "[C]ourts within this Circuit routinely find that pleading allegations about an egregious single event [is] enough to survive a motion to dismiss . . . ."  *Id.*  (quotations omitted).  Further, as discussed above, the  Second Circuit has "repeatedly cautioned against setting the bar too high" for Title VII claims.  *Terry*, 336 F.3d at 148.

CUNY erects a strawman by cherry picking just *four allegations* in the Complaint to argue that the Complaint fails to state a Title VII claim.  *See* Mem. at 14.  This ignores most of the allegations described in Sections A and B, *supra*, regarding numerous instances of threats, harassment and physical violence against Jews on campus, which impeded Plaintiff's ability to do her job and participate in campus life, and are sufficient to demonstrate that CUNY Hunter is "not obviously free from potential liability."  *Gartenberg*, 2025 U.S. Dist. LEXIS 20844, at \*48-49 (quotations omitted).

Taking all of Plaintiff's allegations together, Plaintiff has alleged "episodes of harassment" that "are just as severe or pervasive, if not more so, than the kinds of verbal taunting that courts in this District have deemed sufficient to state a plausible claim for a hostile environment."  *Id.* at \*57.  As an example, the court in *Gartenberg I* referred to *Makhsudova v. City of New York*, No. 20 Civ. 10728 (KPF), 2022 U.S. Dist. LEXIS 89580, at \*11 (S.D.N.Y. May 18, 2022), where a

motion to dismiss a hostile work environment claim was denied where plaintiff's coworker allegedly told her that "her people . . . lived in mountains and ate horse meat," "would 'neigh' like a horse in [her] direction," and referred to her as "the first Uzbek female." 2025 U.S. Dist. LEXIS 20844, at *57-58. Thus, even a relatively limited number of incidents of harassment, perpetrated by a relatively small number of people, can nevertheless be sufficiently severe or pervasive to state a claim under Title VII. Here, in contrast, Plaintiff has alleged that she has had to endure "rampant" antisemitism on campus, by numerous members of the faculty and student body, for a sustained period of time.

Plaintiff's allegations also are indistinguishable from those asserted against Harvard College, and which were found sufficiently severe or pervasive to state a claim under Title VI:

> The protests were, at times, confrontational and physically violent, and plaintiffs legitimately fear their repetition. The harassment also impacted plaintiffs' life experience at Harvard; they dreaded walking through the campus, missed classes, and stopped participating in extracurricular events.

*Kestenbaum v. President & Fellows of Harvard Coll.*, 743 F. Supp. 3d 297, 308-09 (D. Mass. 2024) (finding, based on the aforementioned description of the allegations, that "plaintiffs have plausibly pled that they were subject to severe, pervasive, and objectively offensive harassment.")

Plaintiff also alleges far more severe and pervasive antisemitic harassment at CUNY than was found sufficient to support a Title VII claim against California College of the Arts—namely: (i) an Instagram post showing a pro-Palestinian march and a sign reading "DECOLONIZATION IS NOT A DINNER PARTY"; (ii) a faculty member yelling "F*ck the Zionists" with no pushback at a faculty meeting; and (iii) two faculty complaints about Jewish students reporting in course evaluations that the professors' courses contained antisemitic content. *Fiss v. Cal. Coll. of the Arts*, No. 24-cv-03415-HSG, 2025 U.S. Dist. LEXIS 7456, at *2-19 (N.D. Cal. Jan. 14, 2025).

The court acknowledged "[t]he allegations supporting Plaintiff's hostile work environment claim are not overwhelming, and it is a close call whether the alleged conduct alone, even assuming it eventually can be proven, is sufficient to state a claim." *Id*. at *17. Nevertheless, the court in *Fiss* found that "this claim is most appropriately resolved after further factual development, with the benefit of an actual record as opposed to allegations" and thus denied the motion to dismiss. *Id.* at *17-18. *See also* S*mith-Crockett v. CT Tech. High Sch.*, No. 3:18-cv-01640 (VLB), 2019 U.S. Dist. LEXIS 250383, at *13 (D. Conn. Sep. 24, 2019) (finding school teacher's allegations of regular use of racial slurs and display of swastikas on campus were sufficient "to make it plausible that her workplace was objectively hostile").

In contrast, CUNY does not—and cannot—identify any cases where allegations analogous to Plaintiff's were found insufficient to state a claim under Title VI or Title VII for purposes of Fed. R. Civ. P. 12(b)(6). That is why CUNY resorts to citing a string of decisions dismissing Title VII claims **on summary judgment** or **post-trial**, without disclosing to the Court that these cases are facially inapposite for that reason alone.[12] The motion to dismiss decisions CUNY cites are readily distinguishable based on the very minimal allegations pleaded, including Title VII claims premised on one or a handful of isolated incidents, as opposed to the severe and pervasive antisemitic conduct Plaintiff alleges here. In *Thior v. Jetblue Airways, Inc.*, No. 13-cv-6211, 2016 U.S. Dist. LEXIS 127388, at *9-11 (E.D.N.Y. Sept. 19, 2016), for example, the court found an allegation of "one isolated incident" in which a supervisor mocked the plaintiff's accent was "insufficient to rise to the level of a hostile work environment." In another cited decision, a

---

[12] *See* Mem. at 14-16 (citing *McGrath v. Reuters*, No. 10-cv-4944, 2012 U.S. Dist. LEXIS 81447, at *1 (S.D.N.Y. Apr. 30, 2012) (granting defendant's summary judgment motion); *Davis v. N.Y. Dep't of Corr.*, 256 F. Supp. 3d 343, 351 (S.D.N.Y. 2017) (same); *Alfano v. Costello*, 294 F.3d 365, 369 (2d Cir. 2002) (finding "evidence at trial was insufficient as a matter of law to establish a hostile work environment under Title VII.")).

restaurant worker—who had been fired on allegations of stealing tips from other servers—brought a hostile work environment claim premised on allegations that he was asked to "run food to the table of other waiters, to clean tables, to take out the garbage, to sweep and mop the floor, and to play 'bodyguard.'" *Wallace v. Crab House, Inc.*, No. 21-cv-5757, 2022 U.S. Dist. LEXIS 86345, at *9-11 (S.D.N.Y. May 12, 2022). Acknowledging these "are functions that are typically performed in a restaurant," the court found that the plaintiff failed to plead sufficient facts to support his claim. *Id.* at *16.[13]

CUNY's position that these cases are factually analogous to this case only underscores Plaintiff's well-plead allegations—consistent with the findings of multiple independent reviews, including by Judge Lippman—that CUNY does not take antisemitism seriously.

Moreover, CUNY's argument that Plaintiff's allegations are insufficient to state a hostile work environment claim because Plaintiff learned of some of the alleged conduct "second hand" or because the conduct was not directed at her is without merit. Mem. at 14.

*First*, CUNY ignores that many of the allegations in the Complaint relate to antisemitism experienced by Plaintiff or that she was subjected to *directly*. Plaintiff alleges, among other things, that: (i) *she* was forced "to navigate through hostile crowds as they chanted slogans that are

---

[13] The other motion to dismiss decisions CUNY cites are likewise inapposite. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 713 (2d Cir. 1998) (plaintiff's hostile work environment claim was so poorly pleaded that district court did not consider it, and on appeal, court found a single offensive comment was not sufficient to state a claim); *Duff v. Pristine Serv., Inc.*, No. 19-cv-10423, 2021 U.S. Dist. LEXIS 31210, at *20-25 (S.D.N.Y. Feb. 19, 2021) (plaintiff failed to state a claim "premised on a *single incident*" involving "three pieces of offensive graffiti on the wall of a men's bathroom") (emphasis added); *Sletten v. LiquidHub, Inc.*, No. 13-cv-1146, 2014, U.S. Dist. LEXIS 94697, at *17-25 & n.2 (S.D.N.Y. July 11, 2014) (amended complaint did not "explicitly state a claim for hostile work environment," and allegations of comments made directly to her were "fundamentally inoffensive"); *Spohn v. West*, No. 00-cv-0735, 2000 U.S. Dist. LEXIS 14290, at *13-15 (S.D.N.Y. Oct. 3, 2000) (allegations that employer displayed holiday decorations—but did not display the *specific* Christian symbols plaintiff believed should be displayed—were insufficient to state a hostile work environment claim).

threatening to Jews" as protestors "blocked entrances to elevators and escalators" (Compl. ¶ 8); (ii) *she* "removed her name from her office door, and had it scrubbed from online school directories so she could not be found" (Compl. ¶ 14); (iii) *she* was forced to "turn back from campus and return home" as a result of antisemitic conduct on campus (*Id*. ¶ 63); (iv) *she* was the target of antisemitic comments by another professor (*id.* ¶ 67); (v) *she* was forced to transition her monthly lunchtime speaker series on topics relevant to the Jewish community and Israel to Zoom (*id.* ¶ 81); (vi) *she* was the subject of a March 14, 2024 email from a student organization that "included false and defamatory allegations about [her]" (*id.* ¶ 98); and, *inter alia*, (vii) *her* photograph was published by the same organization on social media (*id.*).

*Second*, as a matter of law, harassment and discrimination *need not* be directed at the plaintiff to state a hostile work environment claim. "[T]he law does not require that the conduct that is the subject of the complaint have been directed toward the plaintiff . . ." *De Souza v. Planned Parenthood Fed'n of Am., Inc.*, 2022 U.S. Dist. LEXIS 101757, at *9 (S.D.N.Y. June 7, 2022). *See also, e.g., Patane v. Clark,* 508 F.3d 106, 114 (2d Cir. 2007) ("a plaintiff need only allege that she suffered a hostile work environment because of her gender, not that all of the offensive conduct was specifically aimed at her."). In *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997), the court found the district court erred in failing to consider racially hostile comments made outside the plaintiff's presence, which he only learned about second-hand. Thus, contrary to CUNY's attempt to dismiss Plaintiff's hostile work environment claim to the extent it relies upon antisemitic conduct she did not directly experience, it would be reversible error for the Court to ignore these allegations.

CUNY also challenges Plaintiff's allegations that CUNY failed to provide adequate security, and that CUNY refused to permit a menorah lighting on campus, on the basis that Plaintiff

has not alleged "that it was discriminatory." *See* Mem. at 15. But Plaintiff alleged that "in April 2024, Muslim students and faculty were granted permission to hold a Ramadan event for over 300 people on campus," illustrating a "double standard" that "caused Plaintiff to feel marginalized and unwelcome due to her Jewish identity" when CUNY did not allow a menorah lighting. Compl. ¶ 78. And based on Plaintiff's allegations that CUNY prioritized protecting the rights of demonstrators over the rights of Jewish students to peacefully participate in classes and events on campus without fearing for their safety—including by suspending educational activities on the "Day of Rage" (*see id.* ¶ 92)—it is plausible that CUNY's failure to provide security requested by Plaintiff for Jewish cultural events *was* discriminatory. *See Ganny v. FJC Sec. Servs.*, No. 15-CV-1965 (FB), 2016 U.S. Dist. LEXIS 125098, at *3 (E.D.N.Y. Sep. 13, 2016) ("a minimal inference of discriminatory intent is plausible based on" allegations that defendant "treated him differently than similarly situated white colleagues, which is a recognized method of raising an inference of race discrimination").

It once again bears emphasis that "[a]lthough it may ultimately turn out that the protestors' conduct . . . was less severe and pervasive than the Complaint makes it seem," that is "properly an issue for the jury." *Gartenberg*, 2025 U.S. Dist. LEXIS 20844, at *59 (quotations omitted). While the allegations in *Gartenberg I* focused primarily on "the protestors' conduct on October 25," Plaintiff's Complaint is based on "rampant" antisemitism that has persisted in particular since October 7, 2023, and is ongoing. The Complaint contains ample allegations of conduct to support an eventual finding by a jury that antisemitism at CUNY Hunter was sufficiently severe and/or pervasive to create a  hostile work environment for Plaintiff because of her religion.

D.    **The Complaint's Allegations Satisfy the Standard to Impute the Conduct to CUNY.**

i.    *The Conduct of CUNY Faculty May Be Imputed to CUNY.*

"Under Title VII, an employer is liable for the harassing conduct of a non-supervisory employee only if it either failed to provide a reasonable avenue for complaint" or if it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Legg v. Ulster County.*, 979 F.3d 101, 115 (2d Cir. 2020) (quotations omitted). The Complaint alleges both.

*First*, accepting Plaintiff's allegations as true, and drawing all reasonable inferences in her favor, the Complaint plausibly alleges that CUNY Hunter had no reasonable avenue to voice complaints. Indeed, the independent Lippman Review found that "CUNY's Portal which is used to file complaints fails in numerous respects." Compl. ¶ 105. Moreover, CUNY Hunter administrators continually ignored or otherwise did not adequately respond to concerns she raised regarding antisemitism on campus, including specific incidents of antisemitic harassment. *See, e.g.,* Compl. ¶¶ 52, 57, 69, 88, 90, 99, & 123.

*Second*, CUNY Hunter knew about, but refused to address, antisemitic conduct by members of the CUNY Hunter faculty. For example, Plaintiff alleges: (i) when Faculty Senate meetings were overtaken, "the Faculty Senate Chair . . . refused to act, and the administration failed to take any measures to address the disruptions" (*Id.* ¶ 9); (ii) "Dean Rose failed to interview" professor who made antisemitic comments about Plaintiff "until months after the complaint was submitted" and ultimately dropped the investigation (*id.* ¶ 67); (iii) "[n]o disciplinary action was taken" with respect to lecturer who singled out a Jewish student during class (*id.* ¶ 69); and (iv) after a CUNY Hunter professor "foment[ed] the mob attack on the rabbi" at a film screening event,

"[t]he College's most senior administrators, all of whom were in attendance, did nothing" (*id.* ¶¶ 73-74).

ii.    *The Conduct of CUNY Students May Be Imputed to CUNY.*

Courts "have previously held in the Title VII context that the conduct of certain non-employees may be imputed to the employer where (1) the employer exercises a high degree of control over the behavior of the non-employee, and (2) the employer's own negligence permits or facilitates that non-employee's discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 39 (2d Cir. 2019) (quotation omitted) (imputing a student's discriminatory intent to the university). CUNY does not dispute that it has a high degree of control over its students. Instead, CUNY claims only that it cannot be held liable for its students' conduct on "non-university" social media accounts, which CUNY claims it "does not have control over." Mem. at 19. CUNY cites only one case, where the court found that because plaintiff did "not allege any concrete facts suggesting that those [social media] messages were posted by members of the Columbia community," the plaintiff did not adequately plead that the university had control over the social media posts. *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 368 (S.D.N.Y. 2017). But here, the Complaint alleges that the social media posts were published by CUNY students and faculty.[14]    Moreover, Plaintiff alleges the content was posted on social media accounts affiliated with the CUNY community (*see* Compl. ¶¶ 53),[15] and by groups that claim to have the support of numerous CUNY faculty members, students and alumni (*see* n.4, *supra*).

---

[14] *See e.g.* Compl. ¶ 55 ("a group of student agitators . . . announced their plans on social media"); *id.* ¶ 62 ("CUNY Hunter student clubs . . . posted antisemitic content on their social media accounts"); ¶ 98 ("CUNY Hunter student organization called 'Not in Our Name' . . . published photographs of Plaintiff on social media").

[15] Plaintiff's allegations refer to multiple posts by a social media account called "CUNY4Palestine." *See* Compl. ¶ 54.  On Instagram, CUNY4Palestine describes itself as a "network of CUNY students & workers."  *See* https://www.instagram.com/cuny4palestine/?hl=en.

Plaintiff has also sufficiently alleged that CUNY's negligence permitted or facilitated the students' discriminatory conduct. For example, Plaintiff alleges: (i) "no action was taken" with respect to student clubs that "prais[ed] the October 7th Hamas terror attack as an 'act of resistance'" and called for escalation "by any means necessary" (Compl. ¶ 56); (ii) "the school took no action" with respect to student clubs calling for the eradication of Zionism from campus (*id.* ¶ 62); (iii) "CUNY Hunter failed to respond when a student asked administrators to address student groups that were harassing Jews on campus" (*id.* ¶ 71); (iv) "no action" was taken with respect to a student organization targeting Hillel (*id.* ¶¶ 88-89); (v) "no action was taken to protect Plaintiff's safety" after a student organization sent a mass distribution email targeting Plaintiff explicitly, and published photographs of her on social media (*id.* ¶ 98); and (vi) "no action" was taken with respect to a student who emailed a Jewish professor that "I believe that real Satan worshipers are better than [Jews]" (*id.* ¶ 99).

       iii.    *The Court Should Reject CUNY's Remaining Arguments Against Imputation.*

CUNY asserts that Plaintiff has purportedly not identified a "perpetrator for most of the conduct alleged." Mem. at 17. This is demonstrably false—Plaintiff has alleged antisemitic harassment by CUNY Hunter faculty and students. *See* Sections I(D)(i) and (ii), *supra.* While Plaintiff did not personally witness every single incident, the Complaint consistently alleges that the conduct at issue occurred on CUNY Hunter's campus and was perpetrated by its faculty, administrators and students. Moreover, CUNY does not cite any authority supporting the proposition that a plaintiff must allege the identities of specific perpetrators. And in any event,

---

Drawing all inferences in Plaintiff's favor, this is an organization of CUNY students and employees. Indeed, in *Nungesser*, the court acknowledged that messages posted on the Columbia Spectator and student news blog websites could plausibly be considered under the university's control. *Nungesser*, 244 F. Supp. 3d at 368.

this court held that The Cooper Union's failure to address antisemitic harassment by campus *trespassers* (*i.e.*, individuals *unaffiliated* with the college) could support a Title VI claim. *See Gartenberg,* 2025 U.S. Dist. LEXIS 20844, at \*63-64.

Finally, CUNY argues that Plaintiff's acknowledgement that CUNY Hunter took *some* action, or *promised* to take action, somehow precludes her Title VII claim. Not so. "[T]he mere act of launching an investigation—let alone the mere act of *promising* to launch an investigation— without any further follow-through cannot defeat a deliberate indifference claim." *Gartenberg I* at \*67 (quotations omitted).[16] "Of course, discovery may turn up evidence demonstrating that [CUNY] did in fact launch a timely and effective investigation . . . and took appropriate action," but the sparse acknowledgements in the Complaint that CUNY took, or promised to take, some action – all of which Plaintiff alleges was inadequate – "cannot, without more, justify dismissal under Rule 12(b)(6)." *Id*. (denying motion to dismiss Title VI claim notwithstanding Cooper Union President's promises that administrators would investigate incidents and hold individuals accountable).

Moreover, CUNY's assertion that its purported remedial actions somehow absolve it of liability under Title VII is belied by the fact that there are no allegations in the Complaint that CUNY imposed any consequences on perpetrators of antisemitic harassment. To the extent the Complaint acknowledges that CUNY took some form of responsive action, it also describes why those actions were inadequate. In contrast, in the cases CUNY relies upon, the employers investigated and took concrete actions to hold perpetrators accountable. In *Roches-Bowman v. City of Mount Vernon*, the police department launched an investigation in response to the

---

[16] "A failure to respond[,] . . . a response that only follows after a lengthy and unjustified delay, . . . and a response that amount[s] to deliberate indifference to discrimination, . . . have all been found inadequate." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012).

harassment complaints that resulted in a demotion of the perpetrator.  No. 21-CV-5572 (KMK), 2022 U.S. Dist. LEXIS 152465, at *18 (S.D.N.Y. Aug. 24, 2022).  Likewise in *Prince v. Cablevision Sys. Corp.*, the complaint acknowledged that the conduct at issue was immediately investigated, and there were no allegations "that no action was taken." No. 04-cv-8151, 2005 U.S. Dist. LEXIS 8147, at *31-32 (S.D.N.Y. May 6, 2005).[17]  To the contrary, the complaint alleged that the employer conducted interviews of all relevant individuals, in some cases multiple times, as part of the investigation.  *Prince*, No. 04-cv-8151, 2004 U.S. Dist. Ct. Pleadings LEXIS 14825 at *11 [¶ 43] (S.D.N.Y. Oct. 18, 2004).

Accordingly, the questions whether CUNY provided a reasonable avenue of complaint, and knew of the harassment but failed to take remedial action – and thus the question whether the harassment can be imputed to CUNY – requires discovery and is best left to the ultimate fact finder.

## II.  PLAINTIFF RESERVES THE RIGHT TO RE-FILE HER STATE LAW CLAIMS IN THE NEW YORK COURT OF CLAIMS.

Plaintiff acknowledges that "absent consent to suit in federal court on the part of the State, this court has no jurisdiction over the plaintiff's state law claims against" CUNY.  *Jungels v. State Univ. Coll.*, 922 F. Supp. 779, 784 (W.D.N.Y. 1996).  However, CUNY "may nonetheless consent to suit in the federal courts."  *Sank v. City Univ. of N.Y.*, No. 94 Civ. 0253 (RWS), 2002 U.S. Dist. LEXIS 5928, at *26 (S.D.N.Y. Apr. 2, 2002).  Plaintiff's preference would be to litigate all of her claims in one forum, but because CUNY objects to this Court's jurisdiction over Plaintiff's state

---

[17] CUNY also cites *Troeger v. JetBlue Airways*, No. 23-cv-10859, 2024 U.S. Dist. LEXIS 228987, at *30, n.4 (S.D.N.Y. Dec. 17, 2024), where the court held that the actions of an independent drug treatment facility could not be imputed to an employer who referred one of its employees to that treatment facility.  The case is inapposite because the alleged perpetrators here are faculty members and students at CUNY, not an independent third party.

law claims (Counts II-IV), Plaintiff reserves her right to re-file those claims in the New York Court of Claims, which has jurisdiction over such claims. *See id.*

## CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests that the Court deny CUNY's Motion to Dismiss Count I of the Complaint.

Dated: New York, New York
      April 24, 2025

                Respectfully Submitted,

                */s/ Michael C. Hefter*

                Michael C. Hefter
                Seth M. Cohen
                Alan M. Mendelsohn
                **ALSTON & BIRD LLP**
                90 Park Avenue
                New York, NY 10016
                T: 212-210-9400
                michael.hefter@alston.com
                seth.cohen@alston.com
                alan.mendelsohn@alston.com

                Ziporah Reich
                **THE LAWFARE PROJECT**
                90 Park Avenue
                633 Third Avenue, 21st Floor New York, NY 10017
                T: 212-339-6995
                ziporah@thelawfareproject.org

                *Attorneys for Plaintiff*

## <u>Certification Pursuant to Local Civil Rule 7.1 (c)</u>

In accordance with Local Civil Rule 7.1(c), I hereby certify that this memorandum of law contains 8,707 words, exclusive of caption and signature block and complies with the word count limit in that Rule, as established using the word count function of Microsoft Word.

<u>*/s/ Michael C. Hefter*</u>
Michael C. Hefter