UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LEAH GARRETT

                              Plaintiff,

-against-                                            Case No. 24-CV-9710 (VSB)

THE CITY UNIVERSITY OF NEW YORK,

                              Defendant.

---

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant CUNY*
28 Liberty Street
New York, New York 10005

Shaina L. Schwartz
Assistant Attorney General
*Of Counsel*


## TABLE OF CONTENTS

Page (s)

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 2

    I.    Gartenberg Supports Dismissal of Plaintiff's Claim ................................... 2

    II.   Plaintiff Fails to Allege That Much of the Alleged Conduct Was Prompted by Her Membership in a Protected Class ................................... 8

    III.  Plaintiff Fails to Plead a Hostile Work Environment .................................. 9

CONCLUSION .................................................................................................................... 11

Certification Pursuant to Local Civil Rule 7.1 (c) ............................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Banks v. General Motors, LLC*,
  81 F.4th 242 (2d Cir. 2023) ................................................................................................10

*Fiss v. Cal. Coll. of the Arts*,
  2025 WL 91181 (N.D. Cal. Jan. 14, 2025) ..........................................................................11

*Gartenberg v. Cooper Union*,
  2025 WL 602945 (S.D.N.Y. Feb. 25, 2025) .................................................................. passim

*Gartenberg v. Cooper Union*,
  765 F. Supp. 3d 245 (S.D.N.Y. 2025) ............................................................................ passim

*Kestenbaum v. Harvard College*,
  24-cv-10092-RGS (D. Mass.) ...............................................................................................11

*Newman v. Point Park Univ.*,
  2022 WL 969601 (W.D. Pa. Mar. 31, 2022) .........................................................................7

*Students for Justice in Palestine v. Abbott*,
  756 F. Supp. 3d 410 (W.D. Tx. 2024) ....................................................................................8

*Tinker v. Des Moines Independent Comm. Sch. Dist.*,
  393 U.S. 503 (1969) ...............................................................................................................8

*University of Maryland Students for Justice in Palestine v. Board of Regents of the Univ. Sys. of Maryland*,
  2024 WL 4361863 (D. Md. Oct. 1, 2024) .............................................................................8

**Constitutions**

U.S. Const. amend. I ............................................................................................................ passim

**Rules**

Local Civil Rule 7.1 (c) ..............................................................................................................13

**Miscellaneous Authorities**

https://hunter.cuny.edu/public-safety/policies/graffiti-protocol/ ................................................11

Defendant City University of New York ("CUNY") submits this reply memorandum of law in support of its motion to dismiss.[1]

## PRELIMINARY STATEMENT

As demonstrated by CUNY, the Complaint is subject to dismissal. ECF No. 12 ("Mot."). Plaintiff fails to state a Title VII claim because almost all the conduct alleged is political speech, which is not actionable as discriminatory harassment. The remaining conduct cannot sustain a hostile work environment claim because it is not severe or pervasive. Moreover, the alleged conduct was not prompted by Plaintiff's membership in a protected class, and cannot be imputed to CUNY.

Plaintiff fails to combat this showing. Instead, Plaintiff misconstrues the applicable case law in arguing the alleged conduct is not protected speech. ECF No. 22 ("Opp."). While Plaintiff concedes the Court's recent decision in *Gartenberg v. Cooper Union*, 765 F. Supp. 3d 245 (S.D.N.Y. 2025) ("*Gartenberg*"), provides the framework for evaluating when political speech may be actionable as discriminatory harassment, Plaintiff misapplies that holding, and ignores established First Amendment jurisprudence. In fact, the very argument Plaintiff raises here was rejected when the plaintiffs in *Gartenberg* sought reconsideration of the ruling that demonstrations and campus communications, even where they contained offensive language, constituted protected speech that could not form the basis of a hostile environment claim. *Gartenberg v. Cooper Union*, 2025 WL 602945 (S.D.N.Y. Feb. 25, 2025) ("*Gartenberg II*"). Plaintiff ignores that decision, and her arguments fail to save her Title VII claim from dismissal.[2]

---

[1] Defendant addresses arguments raised in Plaintiff's opposition and in the Statement of Interest, ECF No. 28 ("Statement of Interest").

[2] Plaintiff concedes that this Court lacks jurisdiction, (Opp., p. 26), and she "intends to dismiss the pendant state law claims." ECF No. 18, n. 1.

**ARGUMENT**

I.   *Gartenberg* **Supports Dismissal of Plaintiff's Claim.**

As CUNY demonstrated, most of the conduct alleged in the Complaint is political speech on the Israel-Palestine conflict, directed to the community at large through accepted methods of communication, and thus is not actionable as discriminatory harassment under Title VII. Mot., pp. 8-10. Plaintiff does not dispute that political speech is not actionable as discriminatory harassment. Opp., p. 13. Instead, Plaintiff argues that the First Amendment does not protect the conduct alleged here. *Id*. This argument misapplies the holding in *Gartenberg*, as well as First Amendment precedent, and distorts the allegations in the Complaint. As described in Defendant's moving brief and below, the holding in *Gartenberg* and other First Amendment jurisprudence supports dismissal.

Like Plaintiff here, the *Gartenberg* plaintiffs alleged a hostile environment based on conduct that included campus advocacy which they considered antisemitic harassment. Mot., p. 10. The *Gartenberg* court ruled that most of the alleged conduct—including demonstrations and campus-wide communications—was *not* actionable as discriminatory harassment. *Gartenberg*, 765 F. Supp. 3d at 271. While the court ultimately held plaintiffs stated a claim, it reached that decision only in light of specific incidents which were not protected under the First Amendment: a violent incident in the library and repeated acts of antisemitic vandalism. *Id*., at 271-74. The court was clear that without the violent incident and repeated acts of vandalism, the plaintiffs' claim would not survive. *Gartenberg II*, 2025 WL 602945, at *3.

Notwithstanding the clear holding of *Gartenberg*, Plaintiff argues the "allegations deemed 'beyond . . . instances of pure political speech' [in *Gartenberg*] are indistinguishable from those alleged here." Opp., p. 12. That is plainly inaccurate. Plaintiff's allegations are readily distinguishable from the conduct deemed beyond political speech in *Gartenberg*. Specifically, the

2

*Gartenberg* plaintiffs alleged they hid in the library while protesters were "banging" on the doors and floor-to-ceiling windows while "demanding to be let in" and "continuing their chants, this time plausibly directed at the visibly Jewish students inside the library." *Gartenberg*, 765 F. Supp. 3d at 272. The court found that this exceeded the bounds of protected speech because it was plausible that this incident was "physically threatening or humiliating to the Jewish students huddled inside the library." *Id*. It was this violent incident, coupled with "*repeated* instances of antisemitic vandalism and graffiti," that "crossed that line" to state a claim. *Id*., at 272-73 (emphasis added). Plaintiff's complaint here is devoid of similarly violent or repetitive conduct.

In an attempt to overcome this absence, Plaintiff purports to analogize the Cooper Union library incident to CUNY's decision to hold classes remotely during a student-organized demonstration, the "Day of Rage for Gaza." Opp., p. 13. But the Complaint is devoid of allegations of physically threatening conduct during the demonstration. Compl., ¶¶ 91-92. This is in stark contrast with the library incident, which was so severe that the Jewish students in the library called the NYPD for help, and the Cooper Union President locked her office door. *Gartenberg*, 765 F. Supp. 3d at 256.

Plaintiff also improperly conflates the analysis of whether conduct is motivated by religion and whether conduct is protected speech. *See infra*, p. 10. Specifically, Plaintiff maintains that the alleged "chants and posters at CUNY" are not protected speech because they are offensive. Opp., p. 13. But this misapplies *Gartenberg* and contradicts longstanding First Amendment principles. Mot., pp. 8-13. While the court in *Gartenberg* found the use of slogans similar to those alleged in the Complaint relevant to the discriminatory intent element of the hostile environment claim, use of those phrases was *not* actionable as discriminatory harassment where it was not physically threatening or repeated vandalism. *Gartenberg*, 765 F. Supp. 3d at 268-270. Indeed,

3

the court ruled that at least *nine* instances of alleged conduct – most of which used phrases analogous to those alleged here – were not actionable as discriminatory harassment. *Id.*, at 270-71; *Gartenberg II*, 2025 WL 602945, at *1-2.

| **Non-Actionable *Gartenberg* Allegation**[3] | ***Garrett* Allegation** |
|---|---|
| • "Approximately one hundred anti-Israel students participated in a [demonstration.]" Demonstrators "had their faces covered" and "shouted antisemitic chants and threats of violence – directed at Plaintiffs and other Jewish and/or pro-Israel students," including "[f]rom the river to the sea, Palestine will be free," "Globalize the intifada from New York to Gaza," "there is only one solution: intifada revolution," "long live the intifada," "resistance is justified when people are occupied," "[h]ey hey, ho ho, Israel has got to go," "[i]t is right to rebel, Israel go to Hell," "Palestine is our demand. No peace on stolen land," and "Shame on you!"[4] | • Protesters shouted chants and slogans, including: "demanding the expulsion of Zionists from CUNY Hunter;" "from the river to the sea, Palestine will be free;" "calling for the eradication of the Jewish state and the elimination of Jews within its borders;" "Hillel, Hillel, what do you say, how many killers did you feed today;" "chants called for violence against Jews and the destruction of the Jewish state;" "displayed signs with disturbing and violent imagery, such as Jewish symbols dripping with blood," and "demands for CUNY Hunter to sever ties with Israeli businesses." ¶¶ 8, 28, 63, 55, 88. |
| • "Fliers were distributed around the Cooper Union Campus inviting students to '[c]elebrate the 36th anniversary of the First Intifada' and to a vigil hosted by Cooper Union's SJO chapter to 'grieve and honor all those killed by decades of Israeli occupation and imperial violence.'" | • "[A]ntisemitic fliers were [] distributed in support of the antisemitic Boycott, Divestment and Sanctions ("BDS") movement against Israel. The fliers claimed that 'Israel is a state built to put Jews over all others,' 'it will not stop unless we stop it,' and 'when we fight we win.'" ¶ 59. |
| • "[A]s part of a school-sanctioned art display, a large banner was hung in the 41 Cooper Square building with the words: "RESIST COLONIALISM FROM THE BRONX TO PALETINE 'BY ANY MEANS NECESSARY'". | • Student clubs "posted antisemitic messages on social media, including calls to 'Globalize the Intifada' and 'escalate by any means necessary.'" ¶¶ 56, 62. |

---

[3]   *Gartenberg*, 765 F. Supp. 3d at 270-71; *Gartenberg II*, 2025 WL 602945, at *1-2.

[4]   *See also* Complaint, ECF No. 1, ¶ 77, *Gartenberg v. Cooper Union*, 24-cv-2669, (S.D.N.Y.).

4

| | |
|---|---|
| • An "alumni letter that 'attempted to justify the sickening Hamas attack of October 7." | • "[S]everal student clubs signed and publicized an open letter praising the October 7th Hamas terror attack as an 'act of resistance'" and declared that "Zionism has no place at an academic institution." ¶¶ 56, 62.<br><br>• Two posts by CUNY4Palestine, one which "debunk[ed]' mass rape by Hamas on October 7th" and the other which "claimed that Hamas was a resistance organization, not a terrorist organization, blaming 'corporate media' for inappropriate labeling Hamas as terrorists." ¶ 54. |
| • "Cooper Union requir[ed] all students, including Jewish students, taking a core Humanities and Social Sciences class to attend a speech titled 'The Never Again Syndrome: Uses and Missuses of Holocaust Memory and the Weaponization of Language, by anti-Israel Activist, Omer Bartov." | • "[A] group of anti-Israel, anti-Zionist, and antisemitic students and faculty members planned a screening of the virulently antisemitic film *Israelism*, which . . . falsely claims that Jews use antisemitism as a tool to silence pro-Palestinian voices." ¶ 72. |

With respect to this conduct, the court stated:

> [r]egardless of whether this expression is better characterized as righteous protest in support of a noble cause, as the vulgar celebration of terrorism and antisemitism, or as something in between, it is not a proper basis on which to impose civil liability on Cooper Union. The content of the protest slogans, fliers, and other expressions [] related to the ongoing Israeli-Palestinian conflict and touched upon topics like Zionism, colonialism, and racism. [The] [c]omplaint offers no factual support for its assertion that any of these messages were intended to target particular Jewish students, as opposed to efforts to communicate a political message to the [university] community at large.

*Gartenberg*, 765 F. Supp. 3d at 271. The court emphasized that "a reasonable person should distinguish between the abstract expression of offensive values, politics, and attitudes on the one hand, and remarks that genuinely target and harass individuals on the other." *Id*., at 265 (cleaned up).

5

The *Gartenberg* plaintiffs challenged the court's ruling that this conduct was not actionable, but the court rejected that attempt and refused to "expose Cooper Union to possible civil liability based on these incidents." *Gartenberg II*, 2025 WL 602945, at *2.[5] While Plaintiff (and others) may have been offended by this alleged conduct, it is simply not actionable as discriminatory harassment.

Plaintiff's reliance on a "mass email" "featuring Plaintiff's picture and inviting anti-Israel groups to target her[,]" is also unavailing, as it was not physically threatening or violent. *Id*., ¶ 11. The email accused Plaintiff of "potentially disseminating decontextualized clips of students . . . to portray them as antisemites." *Id*., ¶ 98. This conduct falls squarely within the definition of protected speech: it is political speech, directed to the community at large through generally accepted methods of communication. *Gartenberg*, 765 F. Supp. 3d at 271. While Plaintiff alleges that this was "false and defamatory," Compl., ¶ 98, and she "feared for her safety," Opp., p. 14, it is not physically threatening, and thus is not actionable. Plaintiff's allegations that the History Club promoted "works of known antisemitic writers," and that a professor asked a student for her opinion on the "genocide in Gaza," Compl., ¶¶ 69-70, suffer the same fate.

Plaintiff similarly fails to allege "repeated acts of antisemitic vandalism." Instead, Plaintiff relies on one instance of antisemitic graffiti, which was removed within hours. Compl., ¶ 60. This is in stark contrast to the *repeated* acts of vandalism in *Gartenberg*, which, in conjunction with the physically threatening library incident, ultimately allowed plaintiffs' claim to proceed. *Gartenberg*, 765 F. Supp. 3d at 273-74.[6] Thus, the types of allegations that were essential to

---

[5] Plaintiff fails to even acknowledge the *Gartenberg* court's reaffirmance that most of the alleged conduct was protected speech, and thus not actionable.

[6] As previously established, conduct which is not protected speech must be evaluated using the traditional hostile work environment framework. For example, the antisemitic graffiti fails to sustain Plaintiff's claim because a

6

propelling the conduct in *Gartenberg* from non-actionable political speech to sufficient to state a claim are not present here.

Moreover, Defendant cited extensive additional authority supporting dismissal, which Plaintiff ignores. Mot., pp. 9, 13-14. For example, in *Rodriguez v. Maricopa County Comm. Coll.*, the court held that "racially-charged emails" sent to a college distribution list were "pure speech; they were the effective equivalent of standing on a soap box in a campus quadrangle and speaking to all within earshot," not conduct targeted by harassment laws. 605 F.3d 703, 710 (9th Cir. 2010). The Ninth Circuit cast doubt that "expression on a matter of public concern, directed to the college community, could ever constitute unlawful harassment," and like the court in *Gartenberg* (*see supra*, p. 7)*,* distinguished between expression directed to the public and speech directed at a particular individual. *Id*. ("racial insults . . . directed at particular individuals in the workplace may be prohibited on the basis of their non-expressive qualities, as they do not seek to disseminate a message to the general public but to intrude upon the targeted listener . . . in an especially offensive way."); *Newman v. Point Park Univ.*, 2022 WL 969601, at *24 (W.D. Pa. Mar. 31, 2022) ("[A]nother hurdle to Plaintiff's hostile work environment claim is a lack of showing that [anyone] held their viewpoints on these contentious issues to cause hostility directed toward Plaintiff or had advocated discriminatory views to harm Plaintiff specifically."). This authority – which Plaintiff does not even attempt to rebut – supports dismissal, as much of the conduct alleged in the Complaint is speech directed to the public on matters of public concern, which does not constitute discriminatory harassment.

---

single instance of graffiti is insufficient to sustain a claim, nor did Plaintiff allege facts to impute the conduct to CUNY because it was removed within several hours after CUNY contacted the NYPD. *See* Mot., pp. 14-15.

7

Nor does CUNY's ability to restrict disruptive speech or implement time, place, and manner restrictions salvage Plaintiff's claim. Statement of Interest, pp. 9-15.[7] The rule espoused in *Tinker v. Des Moines Independent Comm. Sch. Dist.*, 393 U.S. 503 (1969), that schools may prohibit conduct that "materially disrupts classwork or involves substantial disorder or invasions of the rights of others," is not applicable here. In *Tinker*, the Supreme Court evaluated when schools may regulate speech without violating students' First Amendment rights. This framework, however, is not relevant to the inquiry of whether political speech constitutes discriminatory harassment. Indeed, the court in *Gartenberg* rejected the same argument in denying plaintiffs' request for reconsideration, stating that: "[t]he fact that schools have ways of addressing harassment short of censoring political speech does not mean that such expression is unlawful harassment in the first place." *Gartenberg II*, 2025 WL 602945, at *2.

The decisions in *University of Maryland Students for Justice in Palestine v. Board of Regents of the Univ. Sys. of Maryland,* 2024 WL 4361863 (D. Md. Oct. 1, 2024) and *Students for Justice in Palestine v. Abbott*, 756 F. Supp. 3d 410 (W.D. Tx. 2024), are similarly inapposite. Statement of Interest, pp. 12-13. Both consider whether university actions violated students' First Amendment rights, not whether conduct constituted discriminatory harassment. Whether CUNY has the authority to restrict political speech in line with First Amendment jurisprudence is not relevant to the inquiry of whether such speech is actionable under Title VII. As such, Plaintiff fails to overcome Defendant's showing that the political speech at issue here is not actionable.

## II. Plaintiff Fails to Allege That Much of the Alleged Conduct Was Prompted by Her Membership in a Protected Class.

Defendant demonstrated that most of the alleged conduct is conduct which Plaintiff does not, and cannot, allege was prompted by *her* membership in a protected class, and thus it cannot

---

[7]   Plaintiff does not assert this argument.

form the basis of her hostile work environment claim. Mot., pp. 6-8. In response, Plaintiff argues the conduct alleged in the Complaint is antisemitic. Opp., pp. 8-11. This misconstrues Defendant's argument. Defendant established that Plaintiff fails to allege the conduct was prompted by *Plaintiff's* membership in a protected class. Mot., pp. 6-8. In other words, most of the alleged conduct would have occurred even if Plaintiff were not Jewish. Plaintiff does not – and cannot – argue otherwise. Thus, the alleged conduct cannot form the basis of Plaintiff's hostile work environment claim. Mot., pp. 6-8.

While Plaintiff argues that the language used by protesters displayed antisemitic animus, Opp., pp. 8-11, that argument misses the mark. Indeed, even though the *Gartenberg* court found that certain language used by protesters could evince discriminatory motive, where it was connected to political speech, it was not actionable as harassment unless it was physically threatening or used in repeated acts of vandalism. *Gartenberg*, 765 F. Supp. 3d at 271 ("[W]hile some of this speech may properly be considered for [the] discriminatory-intent element, it cannot itself support a claim for an objectively hostile [] environment."). First Amendment concerns do not dissipate "merely by virtue of broadly characterizing offensive speech on sensitive issues as 'harassment' or 'discrimination.'" *Gartenberg II*, 2025 WL 602945, at *4. So too here, notwithstanding whether certain chants and slogans displayed animus, where they were part of political speech, directed to the campus community, and are not physically threatening, they cannot form the basis of an actionable claim.

### III. Plaintiff Fails to Plead a Hostile Work Environment.

Plaintiff fails to rebut Defendant's showing that the remaining alleged conduct – namely, the few instances of alleged conduct which are not protected speech – is not severe or pervasive. Mot., pp. 14-18. Instead, Plaintiff argues the Court should consider "all of [her] allegations together." Opp., p. 16; Statement of Interest, pp. 17-19. This argument ignores the holding of

9

*Gartenberg*, which concluded that protected speech "cannot itself support a claim for an objectively hostile [work] environment." *Gartenberg*, 765 F. Supp. 3d, at 271.[8] In short, to state a claim, Plaintiff must allege that she was subjected to severe or pervasive discriminatory harassment based on conduct which is *not* protected speech. Plaintiff has not done so.

As Defendant demonstrated, there are very few instances of alleged conduct which are not protected speech, and they are not severe or pervasive, and thus do not support a Title VII claim. Mot., p. 14. The remaining alleged conduct, including a stray remark by another professor, CUNY's refusal to provide security at unspecified events and to display a menorah on campus, and removing antisemitic graffiti after several hours, are not severe or pervasive discriminatory harassment. *Id.*, pp. 14-15 (citing cases); *Landau*, 2025 WL 35469, at *2 ("no reasonable person" could construe the decision to celebrate "Asian American/Pacific Islander Month" but not "American Jewish History Month" as intentional discrimination). Plaintiff's conclusory argument that these decisions are "inapposite" (Opp., p. 19, n. 13) is insufficient. Plaintiff also fails to rebut Defendant's showing that most of this conduct cannot be imputed to CUNY. For example, Defendant established that Plaintiff had not alleged facts to impute the graffiti to CUNY because CUNY called the NYPD to "assess the situation" and removed it within a few hours. Mot., p. 17 & n. 5; Compl., ¶ 96. Plaintiff acknowledges that Defendant removed the graffiti after a few hours because they contacted the police to investigate, *id.*, not because of antisemitic animus.[9]

---

[8] Plaintiff cannot rely on the argument that courts may consider allegations about the "general work atmosphere" to circumvent the court's ruling in *Gartenberg* that protected political speech is not actionable as discriminatory harassment. Statement of Interest, pp. 17-19. That principle applies to other *harassing* conduct, not protected political speech. *See, e.g.*, *Banks v. General Motors, LLC*, 81 F.4th 242, 267 (2d Cir. 2023).

[9] The protocol for addressing graffiti requires coordination with NYPD whenever the graffiti could rise to the level of a possible hate crime. *See* https://hunter.cuny.edu/public-safety/policies/graffiti-protocol/.

Plaintiff urges this Court to follow other district courts' decisions (Opp. pp. 17-18); these do not save Plaintiff's claim.[10] The conduct alleged in *Kestenbaum v. Harvard* – like *Gartenberg* – was violent, and not analogous to the conduct alleged here. *See* 743 F. Supp. 3d 297, 304 (D. Mass. 2024). The *Kestenbaum* plaintiffs alleged that "protesters surrounded and intimidated Jewish students," and during one protest, demonstrators "infiltrated [Harvard Law's main building]" and blockaded Jewish students in a study room, who "fear[ed] a violent attack," and "removed indicia of their Jewishness, such as kippot, or hid under desks." *Id*; Complaint, ECF No. 32, ¶ 117, *Kestenbaum v. Harvard College*, 24-cv-10092-RGS (D. Mass.). Here, the Complaint is devoid of similarly physically threatening conduct. *See supra*, pp. 3-7. Thus, Plaintiff fails to state a claim, and the Complaint should be dismissed.

## CONCLUSION

Defendant respectfully requests that the Court dismiss the Complaint with prejudice.

Dated: New York, New York
May 29, 2025

Respectfully submitted,

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant CUNY*

By:   /s/ *Shaina Schwartz*
Shaina L. Schwartz
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-8560
Shaina.schwartz@ag.ny.gov

---

[10] The Court should disregard *Fiss v. Cal. Coll. of the Arts*, 2025 WL 91181, (N.D. Cal. Jan. 14, 2025), because it is an anomaly in First Amendment jurisprudence. The social media post is political speech directed to the community at large, therefore is not actionable as discriminatory harassment under *Gartenberg* and *Rodriguez*.

11

**Certification Pursuant to Local Civil Rule 7.1 (c)**

In accordance with Local Civil Rule 7.1(c), I hereby certify that this memorandum of law contains 3,484 words, exclusive of caption and signature block and complies with the word count limit in that Rule, as established using the word count function of Microsoft Word.

/s/ *Shaina Schwartz*
Shaina Schwartz
Assistant Attorney General